No. 24-20269

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

*ALISHA STRIFE,*

**Plaintiff-Appellant**

v.

*ALDINE INDEPENDENT SCHOOL DISTRICT,*

**Defendant-Appellee**

**On Appeal from the United States District Court for the Southern District of Texas, Houston Division, C.A. No. 4:23-cv-00358**

## APPELLANT'S BRIEF

Respectfully submitted,

*/s/ Scott Newar*
SCOTT NEWAR
Texas Bar Number 14940900
440 Louisiana, Suite 900
Houston, Texas 77002
Telephone: (713) 226-7950
Fax: (713) 226-7181
E-Mail: newar@newarlaw.com

ATTORNEY FOR APPELLANT,
ALISHA STRIFE

i

No. 24-20269

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

### *ALISHA STRIFE,*

**Plaintiff-Appellant**

**v.**

### *ALDINE INDEPENDENT SCHOOL DISTRICT,*

**Defendant-Appellee**

---

**On Appeal from the United States District Court for the Southern District of Texas, Houston Division, C.A. No. 4:23-cv-00358**

---

## <u>APPELLANT'S CERTIFICATE OF INTERESTED PARTIES</u>

---

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1. Plaintiff/Appellant: Alisha Strife

2. Defendant/Appellee: Aldine Independent School District

3.  Counsel for Alisha Strife:

Scott Newar
440 Louisiana, Suite 900
Houston, Texas 77002

Dennis Herlong
440 Louisiana, Suite 900
Houston, Texas 77002

4.  Counsel for Aldine Independent School District:

Spalding Nichols Lamp Langlois
3700 Buffalo Speedway, Suite 500
Houston, Texas 77098

Respectfully submitted,

*/s/ Scott Newar*
SCOTT NEWAR
Texas Bar Number 14940900
440 Louisiana, Suite 900
Houston, Texas 77002
Telephone: (713) 226-7950
Fax: (713) 226-7181
E-Mail: newar@newarlaw.com

ATTORNEY FOR APPELLANT,
ALISHA STRIFE

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................... iv

STATEMENT REGARDING ORAL ARGUMENT ........................................... ix

INTRODUCTION ............................................................................................... 1

STATEMENT OF JURISDICTION.................................................................... 3

STATEMENT OF THE ISSUES......................................................................... 3

STATEMENT OF FACTS AND PROCEDURAL HISTORY .............................. 4

A.   Strife Suffers Disabling Physical and Psychological Injuries Serving In The United States Army In Iraq.................................................................... 4

B.   VA Deems Strife "100%" Disabled From PTSD and Depression................. 6

C.   The Rescue For PTSD Awards Strife A Certified Service Dog .................... 6

D.   Strife Requests AISD Reasonably Accommodate Her Physical/Psychological Disabilities By Allowing Her To Use "Inde" At Work ............................................................................................................... 7

E.   AISD Stonewalls Strife's Accommodation Request...................................... 7

F.   Strife's VA Doctors Confirm Her Disabilities And Need For A Service Dog To Reasonably Accommodate Them ............................................................. 8

G.   AISD Attempts To Violate Strife's HIPAA Rights ..................................... 10

H.   Strife Pleads With AISD To Approve Her Service Dog .............................. 11

I.   AISD Continues To Stonewall Strife's Service Dog Request And Harass/Retaliate Against Her........................................................................ 11

J.   RPTSD And Strife Object To AISD's ADA/RA/TLC Violations................ 14

K.   AISD Continues To Stonewall Strife's Service Dog Request And Demand She Submit To An Invasive Medical Examination ........................ 16

L.   Strife Files An EEOC Charge Against AISD............................................... 18

M.   The VA Confirms "Inde" Mitigates Strife's Mobility Impairments ............. 18

N.   AISD Still Refuses To Approve Strife's Service Dog ................................. 19

O.   Strife Files Suit Against AISD .................................................................... 21

P.   AISD Conditionally Approves Strife's Service Dog Request And Withdraws Its Medical Examination Demand To Avoid A Preliminary Injunction ....... 22

SUMMARY OF LEGAL ARGUMENT ...................................................................23

ARGUMENT ....................................................................................................24

A. The District Court Erred In Dismissing Strife's Reasonable Accommodation Claims Under Fed. R. Civ. P. 12(b)(6)...........................................................24

    1. This Court Reviews The District Court's Dismissal *De Novo*.................24

    2. Strife pled facts supporting an inference that AISD denied her a reasonable accommodation of her disabilities ........................................25

    3. The District Court's Errors......................................................................26

B. The District Court Erred In Dismissing Strife's Hostile Work Environment Claims ....................................................................................................30

    1. Strife Pled Facts Supporting An Inference That AISD Subjected Her To A Hostile Work Environment ..................................................................31

C. The District Court Erred In Granting AISD Summary Judgment on Strife's Disability Discrimination Claim.....................................................................33

    1. Strife Established A *Prima Facie* Case Of Disability Discrimination.....33

    2. Strife Raised A Genuine Issue Of Material Fact That AISD's "Legitimate, Non-Discriminatory" Reason(s) For Constructively Denying Her Service Dog Request Are Pretextual ........36

        a. AISD's Assertion That Strife Delayed The "Interactive  Process" Is False........................................................................................37

        b. AISD's Attempted Cover-Up of Its Discrimination/Retaliation Against Strife Evidences Pretext ........................................................40

        c. AISD's Disparate Treatment of Disabled Employees Requiring Service Animals Evidences Pretext ....................................................41

        d. AISD's Bad-Faith In The "Interactive Process" Evidences Pretext...42

        e. AISD's Violation Of Its Medical Examination Policy Evidences Pretext........................................................................................43

    3. Strife Raised A Genuine Issue Of Material Fact That AISD's Discriminatory Animus Was A "Motivating Factor" For Its Discrimination Against Her....................................................................44

    4. The District Court's Errors......................................................................45

D.   The District Court Erred In Granting AISD Summary Judgment On Strife's Retaliation Claims ........................................................................48

   1.  Strife Established A Genuine Issue Of Material Fact That AISD Retaliated Against Her For Her Protected Activity .................................49

   2.  Strife Established A Genuine Issue Of Material Fact That AISD's "Legitimate, Non-Retaliatory" Reasons Are Pretexts.............................51

   3.  AISD's Retaliatory Animus Was A "But For" Cause Of Its Adverse Actions.......................................................................................51

   4.  The District Court's Errors.....................................................................52

E.   The District Court Erred In Granting Summary Judgment On Strife's ADA "Interference" Claim ...............................................................53

CONCLUSION .......................................................................................54

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Abdallah v. Mesa Air Group*, 83 F.4th 1006 (5th Cir. 2023)....................................52

*Battle v. United Parcel Serv., Inc.*, 438 F.3d 856 (8th Cir. 2006) ..........................46

*Bostock v. Clayton County, Georgia*, 140 S.Ct. 1731 (2020)..................................52

*Burlington N. v. Santa Fe. Ry. Co. v. White*, 548 U.S. 53 (2006) ..........................50

*Calero-Cerezo v. U.S. Dept. of Justice*, 355 F.3d 6 (1st Cir. 2004) ................ 28, 46

*Cannon v. Jacobs Field Servs. N. Am., Inc.,* 813 F.3d 586 (5th Cir. 2016) ............34

*Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762 (5th Cir. 2019)....................30

*Connell v. Bank of Boston*, 924 F.2d 1169 (1st Cir. 1991).....................................50

*Dahda v. U.S. Roosevelt Rico Dahda*, 138 S.Ct. 1491 (2018) ...............................54

*Feist v. State of Louisiana*, 730 F.3d 450 (5th Cir. 2013) ................................ 25, 34

*Flowers v. Southern Regional Physician Serv.*, 247 F.3d 229 (5th Cir. 2001) .......31

*George v. SI Grp.*, 36 F.4th 611 5th Cir. 2022) ..........................................................24

*Groome Resources Ltd. v. Parish of Jefferson*, 234 F.3d 192 (5th Cir. 2000)........27

*Haire v. Board of Supervisors of Louisiana State University Agricultural & Mechanical College*, 719 F.3d 356 (5th Cir. 2013) ............................................51

*Hamilton v. Dallas County*, 79 F.3d 494 (5th Cir. 2023) .......................................35

*Hamilton v. Promise Healthcare*, No. 23-30190 (5th Cir. Oct. 12, 2023) .............. ix

*Humphrey v. Memorial Hospitals Ass'n*, 239 F.3d 1128 (9th Cir. 2001)................43

*Jenkins v. Cleco*, 487 F.3d 309 (5th Cir. 2007) .......................................................43

*Kemp v. Holder*, 610 F.3d 231 (5th Cir. 2010).........................................................25

*Laxton v. Gap*, 333 F.3d 572 (5th Cir. 2003).............................................................42

*Leal v. McHugh*, 731 F.3d 405 (5th Cir. 2013) .......................................................25

*Loulseged v. Akzo Nobel Inc.*, 178 F. 3d 731 (5th Cir. 1999)..................................27

*Machinchick v. PB Power, Inc.*, 398 F.3d 345 (5th Cir. 2005) ...............................44

*Menoken v. Dhillon*, 975 F.3d 1 (D.C. Cir. 2020) ..................................................53

*Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 144 S.Ct. 967 (2024)
..................................……………………………………………..ix, 35, 36, 50

*Murthy v. Missouri*, No. 23-411 (June 26, 2024) ....................................................30

*Patton v. Jacobs Eng'g Grp., Inc.*, 874 F. 3d 437 (5th Cir. 2017) .........................31

*Perkins v. City of New York*, 2023 WL 370906 (2nd Cir. 2023).............................46

*Peterson v. Linear Controls, Inc.*, 757 F.App'x 370 (5th Cir. 2019) .......................36

*Pinkerton v. Spellings*, 529 F.3d 513 (5th Cir. 2008) ...............................................45

*Reeves v. Sanderson Plumbing Products*, 530 U.S. 133 (2000).............................41

*Schilling v. La. Dep't. of Transp. & Dev.*, 662 F. App'x. 243 (5th Cir. 2016).........38

*Tabatchnik v. Continental Airlines*, 262 F. App'x 674 (5th Cir. 2008) ..................49

*Thomas*, 2024 WL 2874367 (5th Cir. June 7, 2024) ................................................24

*Williams v. Administrative Review Board,* 376 F.3d 471 (5th Cir. 2004)..............31

*Williams v. Tarrant Cnty. Coll. Dist.,* Fed. Appx. 440 (5th Cir. 2018)..................12

**Statutes**

42 U.S.C. section 12112(d)(4)(A)....................................................... 35, 36, 47, 48

Tex. Hum. Res. Code section 121.003(c), (i) .........................................................21

Tex. Hum. Resources Code section 121.001 et seq..................................................21

Tex. Labor Code section 21.001 *et seq.*................................................ 2, 25, 33, 37

**Other Authorities**

28 U.S.C. section 1291 ...............................................................................................3

42 U.S.C. section 12203(b)........................................................................................52

42 U.S.C. section 12112(a) ........................................................................................25

42 U.S.C. section 12112(b)(5) ...................................................................................35

42 U.S.C. section 12112(d)(2) ...................................................................................47

42 U.S.C. section 12203(a) ............................................................................. x, 49, 52

42 U.S.C. section 2000e-2(a)......................................................................................35

**Rules**

28 C.F.R. 36.104 ........................................................................................................47

29 C.F.R. 1630.2(j)(3)(iii)..........................................................................................47

Fed. R. Civ. P. 12(b)(6)...........................................................................................3, 25

Fed. R. Civ. P. 56 ....................................................................................... 2, 3, 25, 39

## **STATEMENT REGARDING ORAL ARGUMENT**

Ms. Strife requests oral argument because this case presents issues of first impression in this circuit, including:

1. Whether a covered employer's constructive denial of an employee's request for a concededly reasonable accommodation violates the ADA, the Rehabilitation Act, and/or Tex. Labor Code section 21.001 *et seq.*

2. Whether and, if so, to what extent, *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 144 S.Ct. 967, 218 L.Ed. 2d 322 (2024) and *Hamilton v. Dallas County*, 79 F4th 494 (5th Cir. 2023) (*en banc*) apply to ADA and Rehabilitation Act employment discrimination—including the constructive denial of an employee's request for a concededly reasonable accommodation—and retaliation claims; and

3. The scope of the ADA's "interference" provision (42 U.S.C. section 12203(b))

This court's resolution of these issues—and subsidiary ones—will impact numerous physically and psychologically disabled Americans—especially, the thousands of military veterans who suffer from Post-Traumatic Stress Disorder ("PTSD")—for which they must have and use service animals in the workplace.

# **INTRODUCTION**

Thousands of physically and psychologically disabled American military veterans depend upon service animals for their daily existence.[1] Alisha Strife is one of them.

In 2003-2004, Strife served this Nation in "Operation Iraqi Freedom." During her military service, Strife was seriously injured and, ultimately, became physically disabled. She also suffered and continues to suffer from disabling PTSD, severe depression, and anxiety.

In June 2022, "Rescue for PTSD"—a non-profit organization that trains and provides service dogs to military veterans suffering from PTSD—awarded Strife a certified service dog named "Independence" ("Inde") to assist her with her PTSD, severe depression, and mobility impairments.

From late August 2022 through February 24, 2023, Aldine Independent School District ("AISD")—a Texas public school district for which Strife worked as a Performance Analyst—refused to allow Strife to have and use "Inde" in its workplace, despite the fact AISD *admits* that "Inde" posed no undue hardship. The evidence—viewed in the light most favorable to Strife—establishes that AISD refused to allow Strife to have and use "Inde" in the workplace because it harbored

---

[1] *See* PAWS for Veterans Therapy Act, Pub. Law No. 117-37, available at https://www.congress.gov/bill/117th-congress/house-bill/1448

a discriminatory animus against service animals—especially, psychological therapy animals—and a retaliatory animus against Strife for attempting to vindicate her rights under the ADA, Rehabilitation Act ("RA"), and Tex. Labor Code section 21.001 *et seq.* ("TLC") to a reasonable accommodation of her disabilities.

On February 1, 2023—after exhausting her EEOC administrative remedies—Strife sued AISD to vindicate her ADA/RA/TLC rights and to prevent AISD from subjecting other disabled employees—especially, disabled military veterans—to such discriminatory and retaliatory conduct.

On June 12, 2024—on the eve of trial—the District Court granted AISD's Motion for Partial Dismissal with respect to Strife's ADA/RA/TLC reasonable accommodation and hostile work environment claims; granted its Motion for Summary Judgment with respect to her ADA/RA/TLC discrimination and retaliation claims and her ADA interference claim; and dismissed her lawsuit with prejudice.

As detailed below, the District Court erroneously concluded that Strife failed to sufficiently plead her ADA/RA/TLC reasonable accommodation and hostile work environment claims. The District Court also erroneously concluded that Strife failed to raise a genuine issue of material fact that AISD subjected her to

disability-based discrimination and retaliation and interfered with her exercise and enjoyment of her ADA rights.

Strife respectfully requests this court reverse the District Court's Order *in toto*.

## STATEMENT OF JURISDICTION

On June 12, 2024, the United States District Court for the Southern District of Texas, Houston Division (Bennett, J.), entered an Order granting AISD's Motion for Partial Dismissal of Plaintiff's Second Amended Complaint and AISD's Motion for Summary Judgment and dismissed Strife's lawsuit with prejudice. *See* RE3.

Strife timely appealed that Order. *See* RE2.

Therefore, this Court has jurisdiction of this appeal under 28 U.S.C. section 1291.

## STATEMENT OF THE ISSUES

1. **Whether the District Court erred in dismissing Strife's ADA/RA/TLC reasonable accommodation and hostile work environment claims under Fed. R. Civ. P. 12(b)(6)**

2. **Whether the District Court erred in granting AISD summary judgment on Strife's ADA/RA/TLC discrimination and retaliation claims and on her ADA interference claim**

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Following are the facts rendered in the light most favorable to Strife and with all reasonable inferences drawn in her favor— as Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 56 require.

### A.    Strife Suffers Disabling Physical and Psychological Injuries Serving In The United States Army In Iraq

Alisha Strife ("Strife") is 38 years old and a mother of two children. *See* ROA.1137. Strife and her family reside in Magnolia, Texas.

In February 2003, Strife enlisted in the United States Army. *See* ROA.1111. In late 2003/early 2004, the U.S. Army deployed Strife first to Kuwait and then to Iraq to support "Operation Iraqi Freedom." *See* ROA.1112, at 9:7-17.

While in Iraq, Strife sustained a Traumatic Brain Injury ("TBI"), shoulder injury, leg injury, and Post-Traumatic Stress Disorder ("PTSD"). *Id.*, at 9:25-11:12.

In May 2005, the Army medically discharged Strife. *Id.*, at 11:16-21.

As a result of her service-related injuries, Strife has undergone multiple surgeries over the last fifteen years, including two leg surgeries; Tibial Tubercle Osteotomy and Medial Patellofemoral Ligament ("TTO/MPFL") reconstruction; and hip surgery. *See* ROA.1117-1118, at 32:14-33:1. Strife has also undergone extensive treatment for PTSD, major depression, and anxiety. *See* ROA.1118-1119, at 36:22-37:11; 37:19-24.

1. **Strife Excels As An AISD Teacher, Teaching Coordinator, And Project Analyst**

In 2010, Strife obtained a bachelor's degree in elementary education from Stephen F. Austin State University. *See* ROA.1112, at 12:10-18. After obtaining her degree, Strife taught pre-school. *Id.*, at 12:24-13.

In the fall 2012, Strife began working in AISD as an elementary school teacher. *See* ROA.1113, at 13:9-15. Strife taught fifth and sixth grade for two and a half years. *Id.*, at 13:16-18.

Because of her disabling PTSD, anxiety, and depression, Strife was unable to continue teaching, her lifelong passion. Therefore, Strife became an AISD Testing Coordinator, a position she held and performed well for approximately six years. *Id.*, at 13:19-21; 14:4-7.

In July 2022, AISD promoted Strife to Project Analyst in its Human Resources department. *Id.*, at 14:15-15:11. As a Project Analyst, Strife helped AISD procure from the State of Texas and administer Teacher Incentive Allotments ("TIA"), which are state-funded financial incentives for high-performing teachers. *See* ROA.1114, at 17:12-16; *see also* https://tiatexas.org/

As a Project Analyst, Strife works in an enclosed office in AISD's central administration building. The most immediate route to Strife's Project Analyst office from the AISD parking lot requires Strife to climb a steep stair bank. *See* ROA.1113, at 39:7-40:2; 42:14-43:7; 45:25-46:13; ROA.1138-1140.

## B. VA Deems Strife "100%" Disabled From PTSD and Depression

In 2017, the Veterans Administration ("VA") deemed Strife 100% disabled from her service-related PTSD and depression; 20% disabled from a right knee subluxation; 10% disabled from a left chronic ankle sprain; and 10% disabled from joint disease in her right knee. *See* ROA.1142.

Strife's 100% service-related disability from PTSD and depression is not anomalous. According to the VA, up to 20% of military veterans who served in "Operation Iraqi Freedom" and "Operation Enduring Freedom" suffer from PTSD yearly; approximately 12% of Gulf War veterans suffer from PTSD yearly; and approximately 30% of Vietnam War veterans suffer from PTSD yearly.[2]

## C. The Rescue For PTSD Awards Strife A Certified Service Dog

Before 2021, Strife tried numerous standard PTSD treatments—to little or no avail. *See* ROA.1118-1119, at 36:22-37:11; 37:19-24. Therefore, in 2021, Strife applied for a service dog from The Rescue for PTSD ("RPTSD")—a non-profit organization that trains and provides services dogs to military veterans suffering from PTSD. *See* ROA.1114, at 19:16-20:1; https://rescueforptsd.org/[3]

---

[2] *See "Improving Healthcare for Veterans with PTSD," VA Health Systems Research*, June 2022, available at https://www.hsrd.research.va.gov/news/feature/ptsd-0622.cfm

[3] As Strife's Second Amended Complaint notes, clinical studies demonstrate that specially trained therapy dogs reduce PTSD symptoms in military veterans. *See* RE4, at para. 31.

In June 2022 RPTSD awarded Strife a certified PTSD service dog named "Independence" (a/k/a "Inde"). *See* ROA.1114, at 19:25-20:1; 21:16-22:6. "Inde" assists Strife with both her physical and her psychological disabilities. Specifically, "Inde" enables Strife to rise and stand from a seated position; maintain her balance and gait; protect/help her when she falls; and, by applying deep pressure, cope with her PTSD symptoms. *See* ROA.1118, at 35:13-36:5; 36:12-21; ROA.1146-1156.

**D.      Strife Requests AISD Reasonably Accommodate Her Physical/Psychological Disabilities By Allowing Her To Use "Inde" At Work**

On August 30, 2022, Strife first requested AISD reasonably accommodate her physical and psychological disabilities by allowing her to have and use "Inde" at work. Strife submitted an ADA reasonable accommodation request to AISD through its third party contractor, Broadspire. *See* ROA.1218-1219, at 57:22-58:21.

**E.      AISD Stonewalls Strife's Accommodation Request**

AISD's Employee Accommodations Committee ("EAC") is an *ad hoc* committee that reviews and adjudicates disabled employees' requests for reasonable accommodations. The EAC has *no* policies or procedures and maintains *no* formal meeting notes or records. *See* ROA.1162-1359, at 39:1-7; 192:24-193:10. ROA.1200. Additionally, in 2022, most EAC members lacked *any* ADA knowledge, experience, or training. *See* ROA.1199-1200, at 36:1-36:15; ROA.1162-1359, at 51:9-15; 194:19-195:6; ROA.1379; ROA.1199-1200; 1355-

1356; 1379; 1387-1410. In 2022, Mindy Smith ("Smith")—an AISD Human

Resources Executive Director—was the EAC's chairperson. *See* ROA.1162-1359,

at 38:19-25; 39:22-23.

On September 16, 2022, the EAC met to consider Strife's service dog

accommodation request. The EAC refused to approve Strife's service dog because

it hoped to identify ***"alternative accommodations*...**" *See* ROA.1417-1418, at

Response 2 (emphasis added).

### F.    Strife's VA Doctors Confirm Her Disabilities And Need For A Service Dog To Reasonably Accommodate Them

On September 22, 2022, Dr. Lisa Miller—a VA Doctor of Pharmacology

who has treated Strife for PTSD, depression, and anxiety since 2007[4]—attested

that Strife requires a service dog for those psychological conditions. *See*

ROA.1425**,** at 26:5-27:13; 26:22-27:4; ROA.1427-1428. On September 26, 2022,

Strife tendered to Smith Dr. Miller's September 22nd letter. *See* ROA.1430.

On September 27, 2022, Smith informed Strife that Dr. Miller's September

22nd letter was "***exactly*** what [AISD] needs…" See ROA.1556 (emphasis added);

ROA.1162-1360, at 96:4-19; ROA.1116, at 27:25-28:14. Yet, in derogation of the

ADA,[5] Smith—acting at AISD's legal counsel's (M. Kaye DeWalt) direction—

---

[4] Dr. Miller has a specialization in psychiatrics.

[5] *See infra*, at 37-38.

informed Strife that AISD "need[ed]" a *"Medical Doctor"* to provide this same

information. *See* ROA.1430-1431 (emphasis added); ROA.1260-1261, at 99:24-

100:3. Smith further notified Strife that AISD expected the "medical doctor" to be

*"board-certified*." *Id.* (emphasis added).

In response, Strife informed Smith that Dr. Miller *is* her primary treating

doctor at the VA. Strife also provided Smith with a link to an online article

entitled: "Role of the US Veterans Health Administration Clinical Pharmacy

Specialist Provider: Shaping the Future of Comprehensive Medication

Management." *See* ROA.1556. This article explains that, because the VA has a

"substantial shortage" of primary and specialty care providers, Doctors of

Pharmacology provide "direct patient care" to veterans.[6] *See* ROA.1263, at 102:5-

14.

Nevertheless, in a good-faith attempt to comply with AISD's request and the

ADA "interactive process," Strife tendered to Smith a September 29, 2022 letter

from Dr. Gurtej Mann—her VA treating *psychiatrist*. See ROA.1532; ROA.1116,

at 28:16-2. In his letter, Dr. Mann also attested that Strife suffers from PTSD, TBI,

and osteopenia. Dr. Mann further stated that a service dog would be "invaluable"

to Strife's "mental and physical health recovery." *Id.*

---

[6]*Id.*; *see* ROA.1430-1431

Yet, despite receiving the "exact" information it had requested from Strife's doctors, AISD *still* refused to approve "Inde."

### G. AISD Attempts To Violate Strife's HIPAA Rights

Instead, on October 14, 2022, Smith—*without* Strife's knowledge or her written authorization—drove to the Houston VA and attempted to elicit HIPAA-protected information about Strife from her VA doctors. *See* ROA.1361-1386, at 46:24-48:5; ROA.1162-1359, at 148:21-151:8.

In her deposition, Smith prevaricated about the reason she went to the VA. Smith testified that she went to the VA *only* to request that Drs. Mann and Miller "verify" their respective September 22nd (Miller) and September 29th (Mann) letters. *Id.*, at 150:16-23.

Yet, in his deposition, Dr. Javier Villarreal—AISD's then-Chief Human Resources Officer and Smith's immediate supervisor[7]—testified that Smith went to the VA to elicit information from Drs. Miller and Mann about Strife's *medical condition*, including her "physical limitations." *See* ROA.1361-1386, at 46:24-47:22.

The VA refused to allow Smith to speak with Drs. Mann and Miller because Smith lacked written authorization to do so. Smith left, but not before taking

---

[7] *See* ROA.1361-1386, at 21:13-22:2. On July 1, 2023, Dr. Villarreal became AISD's Chief of Schools. *Id.*, at 21:23-22:2.

pictures of the VA to—in her words—"prove" she had been there. *See* ROA.1310-

1311, at 149:15-150:11.

### H. Strife Pleads With AISD To Approve Her Service Dog

Throughout October 2022, Strife requested updates from Smith regarding

the status of her service dog request. For example, in an October 24, 2022 email,

Strife pleaded with Smith to approve her request to work with "Inde":

> I need to know what HR needs. "We have been trying to
> obtain verification from your doctor's office." This
> meant to me that you needed to talk to them, but then you
> said we need "official paperwork completed." I just need
> to know what you need; I feel defeated [at] this point. I
> thought everything was good because I had not heard
> anything since late September. The last time we spoke
> was about the file needing a letter stating what the
> service do was needed for and signed by an MD. I want
> to do this the right way, but I had no idea anything [sic]
> was still needing documentation."

*See* ROA.1539-1543

Strife's plea proved futile.

### I.    AISD Continues To Stonewall Strife's Service Dog Request And Harass/Retaliate Against Her

Therefore, in furtherance of Strife's continuing good-faith effort to comply

with the ADA "interactive process," Dr. Mann completed and tendered to AISD on

November 1, 2022, an ADA "Job Accommodation Questionnaire" ("JAQ"). *See*

ROA.455-457.

11

In the JAQ, Dr. Mann stated that Strife suffers from Major Depression, PTSD, anxiety disorder, and TBI, among other disabling conditions. *Id*. Dr. Mann made clear that a "trained service animal"—capable of "grounding" Strife and applying "deep pressure"—was the only reasonable accommodation of her disabling psychological conditions that he recommended. *Id.*, at Question 4.

Yet, despite Dr. Mann's *second* confirmation that Strife required a service dog, AISD still refused to approve her service dog accommodation request.

In her deposition, Smith revealed that the reason AISD still refused to approve Strife's accommodation request is because—without *any* supporting evidence and in the face of contradicting evidence—AISD deemed "Inde" to be an "emotional support animal," not a service animal.[8] *See* ROA.1270-1272, at 109:16-111:22. As a result, without notifying Strife, AISD decided it would approve Strife's service dog request *only* if she could prove that "Inde" reasonably accommodated her ***physical*** disabilities. *Id.*

AISD's decision violated the ADA, which recognizes that properly trained service animals also qualify as reasonable accommodations of ***psychiatric*** disabilities, including PTSD and depression.[9]

---

[8] On September 5, 2022, RPTSD had certified that "Inde" is a "fully trained ***service dog***." *See* ROA.1145 (emphasis added). Strife tendered this letter to AISD on Sept. 11, 2022. *See* ROA.1600-1604.

[9] The ADA defines "service animals" to include "any dog that is individually trained to do work or perform tasks for the benefit of an individual with a disability, including

On November 16, 2022—in furtherance of its illegal decision—AISD mandated Strife undergo a *complete* physical examination by an *AISD-retained* doctor. *See* ROA.462. AISD's internal emails—which it produced only in discovery—reveal it mandated Strife submit to this wholesale violation of her privacy because it was desperately seeking to prevent her from having/using her service dog at work.

Specifically, in a November 9, 2022 email to the Texas Association of School Boards ("TASB"), AISD's Director of Risk Management's November 9, 2022 laid bare this illicit objective:

> "The district would like for [Strife] to be evaluated by the peer review doctor/ designated doctor and advise if ***alternative accommodations, other than service animals**, **can be implemented**…"

*See* ROA.1559-1561 (emphasis added).

AISD's demand that Strife submit to a complete medical examination by an AISD-retained doctor also violated AISD's *own* policy. Under AISD policy, AISD could require an employee to undergo such an examination *only* if "information received…indicates the employee has a physical or mental impairment that

---

a…***psychiatric***…disability. *See* 28 C.F.R. 36.104 (emphasis added). PTSD and major depressive disorder are psychiatric disabilities. *See* 29 C.F.R. 1630.2(j)(3)(iii) (MDD and PTSD "substantially limit brain function"); *see also Williams v. Tarrant Cnty. Coll. Dist.*, 717 Fed. App'x. 440, 447-448 (5th Cir. 2018) (ADA regulations recognize PTSD and major depressive disorder as substantial limitations on brain function).

interferes with the employee's ability to perform ***essential*** job functions; or poses a ***direct threat*** to the health or safety of the employee or others…" *See* ROA.1565-1569 (emphasis added).

Yet, on November 3, 2022—that is, eight days earlier—Smith memorialized that Strife *could* perform her *essential* Project Analyst job duties with or without reasonable accommodation. *See* ROA.1571; ROA.1188-1191, at 27:5-30:5.[10] Furthermore, AISD had no evidence—and, therefore, has never contended—that Strife posed *any*—let alone, a "direct"—threat to herself or anyone else.

## J.     RPTSD And Strife Object To AISD's ADA/RA/TLC Violations

AISD's illegal demand that Strife submit to a complete medical examination by an AISD-retained physician and its continued stonewalling of her service dog request forced Strife to seek legal advice.

Strife first sought legal advice from RPTSD. On November 11, 2022, Jennifer O'Connell—RPTSD's counsel—transmitted a second letter to AISD. In that letter, O'Connell advised AISD that its continuing refusal to approve "Inde" and its demand that Strife submit to a medical examination by an AISD-retained physician violated the ADA. *See* ROA.1595; ROA.1414-1416.

---

[10] Additionally, before retaining the doctor to perform this invasive physical examination of Strife, AISD made no effort to determine whether the doctor (Dr. Nguyen) had any expertise in diagnosing or treating PTSD or depression. *See* ROA.1309, at 148:10-20.

AISD was angered by RPTSD's intercession on Strife's behalf. Immediately after receiving RPTSD's letter, Smith—acting at DeWalt's direction[11]—demanded that Strife notify AISD whether she was "refusing to continue the interactive process to determine whether she [could] perform the essential functions of her job with or without reasonable accommodations." *See* ROA.1597; ROA.1598-1604. This, despite the fact: 1) neither Strife nor RPTSD had indicated Strife was discontinuing the "interactive process"; and 2) AISD had ***already*** determined that Strife ***could*** perform her ***essential*** job functions.[12]

Smith further notified Strife that—despite RPTSD's letter—AISD was still requiring her to submit to a medical examination by an AISD-retained doctor. *Id.*

Because AISD refused to retract its illegal demand that Strife submit to a medical examination by its retained physician, Strife retained independent legal counsel. On November 18, 2022, Scott Newar—a Houston attorney—transmitted a letter to AISD. In that letter, Newar likewise informed AISD that its demand that Strife undergo a medical examination by an AISD-retained physician and its continuing refusal to approve Strife's service dog request violated the ADA and

---

[11] *See* ROA.1563. In her internal notes for November 11, 2022 (3:35 p.m.), Smith recorded that, after receiving O'Connell's November 11th letter, she (Smith) went to "Kaye DeWalt who advise[d] her…"

[12] *See* ROA.1571-1576, at 1575.

Texas law. *See* ROA.1609-1628. Therefore, Newar demanded that AISD retract the medical examination directive and immediately approve Strife's service dog accommodation request.

### K.     AISD Continues To Stonewall Strife's Service Dog Request And Demand She Submit To An Invasive Medical Examination

In a November 18th email, DeWalt responded to Newar's letter. DeWalt stated that AISD refused to retract its demand that Strife submit to a medical examination by an AISD-retained physician. DeWalt further stated that AISD was requiring Strife to submit to this medical examination to enable AISD to identify **"*other*"/"*additional*"** accommodations. *See* ROA.1630 (emphasis added).

Therefore, on November 19th, Newar requested that AISD provide Strife— within three business days—specific information pertaining to its continuing refusal to approve her service dog request, including identifying any "additional accommodations" AISD was considering. *See* ROA.1633-1635. AISD failed to respond to Newar's request.

Instead, on December 5, 2022, DeWalt transmitted to Newar a letter stating—once again—that AISD refused to retract its demand that Strife submit to a medical examination by an AISD-retained physician.[13] This time, DeWalt proffered several reasons for AISD's refusal: 1) Dr. Miller's September 22, 2022

---

[13]*See* ROA.1639-1643, at 3 ("[W]e cannot withdraw our request that Ms. Strife is [sic] examined by a medical provider…").

letter was "unsigned"; 2) Dr. Miller's signature line in that letter contained the word, "Dr."; and 3) Dr. Mann's September 29, 2022 letter was not on VA "letterhead" and contained "only an electronic signature." *Id.*

In light of Smith's admission that AISD had ***already*** decided to deny Strife's service dog request because it (unjustifiably) considered "Inde" to be an "emotional support animal"—not a service animal—DeWalt's stated reasons for continuing to demand Strife submit to a medical examination by an AISD-retained physician were nothing more than pretexts designed to justify AISD's refusal to allow Strife to work with "Inde."[14]

Because of AISD's continued stonewalling of Strife's service dog accommodation request, Newar transmitted to AISD on December 23, 2022, additional evidence supporting Strife's need to have/use her service dog at work: 1) a December 21, 2022 letter from Dr. Lisa Miller, attesting that she (Miller) is, in fact, a doctor; had served as one of Strife's treating VA physicians since 2007; and had written the September 22, 2022 letter attesting to Strife's need for a service

---

[14] DeWalt also attempted to justify AISD's continuing demand that Strife submit to a medical examination by an AISD-retained physician on the ground that Strife's VA doctors had failed to propose "other" reasonable accommodations besides a service dog. *See id.*, at 2 (emphasis added) ("Ms. Strife's psychiatrist did not provide any information about ***other*** reasonable ***accommodations*** for her mobility issues…"); at 3 (emphasis added)  ("The questionnaire bearing Ms. Strife's psychiatrist's signature is missing critical information regarding ***other possible accommodations***."). As detailed below, under the ADA Strife's doctors were *not* required to identify other reasonable accommodations—even assuming they existed, which they did not. *See infra*, at 39-40.

dog; 2) a December 22, 2022 letter from Dr. Robert Garza—Director of the VA's

Mental Health Clinic at the Debakey Center—attesting that Strife suffers from

PTSD, depression, and TBI and that both Drs. Miller and Mann had treated her for

those conditions; and 3) a December 19, 2022 VA determination that Strife

remained "100%" disabled from PTSD and depressive disorder. *See* ROA.1645-

1650. Based on this information, Newar—once again—requested that AISD

withdraw its demand that Strife submit to a medical examination by AISD's

retained physician and approve her service dog request. *Id.*

Unfortunately, AISD still did not relent. Rather, on December 23, 2022,

AISD *again* ordered Strife to submit to a medical examination by an AISD-

retained physician: this time, on January 10, 2023. *See* ROA.1652.

### L. Strife Files An EEOC Charge Against AISD

Consequently, on January 6, 2023, Strife filed a Charge of Discrimination

with the EEOC and the Texas Workforce Commission ("TWC"). In her Charge,

Strife asserted that AISD had subjected her to disability-based discrimination—

including denial of a reasonable accommodation of her disabilities—and retaliation

for opposing such discrimination. Strife—through Newar—contemporaneously

notified AISD of the Charge's filing. *See* ROA.1654-1670.

### M.    The VA Confirms "Inde" Mitigates Strife's Mobility Impairments

On January 10, 2023, Strife voluntarily underwent a medical examination by VA doctors to determine whether she suffers from mobility impairments and, if so, whether "Inde" mitigates those impairments. Dr. Sheryl Vandeven, a VA Physical Therapist, performed this examination. *See* ROA.1147-1148.

Dr. Vandeven determined Strife suffers from "chronically impaired standing, balance and gait with history of multiple falls and injuries…" Dr. Vandeven also determined that "Inde" mitigates Strife's mobility impairments. *Id.*

Following Dr. Vandeven's examination, Dr. Darlene Makulski—a VA Assistant Professor of Physical Medicine and Rehabilitation who also treats Strife and referred Strife to Dr. Vandeven—issued a letter stating that Dr. Vandeven had examined Strife to determine whether a service dog would assist Strife with her mobility impairments and that Dr. Vandeven had determined that Strife requires "Inde" "***in all settings (including place of employment) to avoid further balance-related injuries.*** *See* ROA.1485 (emphasis added).

On January 11, 2023, Newar transmitted to AISD Dr. Makulski's January 10, 2023 letter. Newar simultaneously transmitted to AISD a January 9, 2023 letter from Dr. Mann that reaffirmed he (Mann) had treated Strife for PTSD and depression since August 2022 and had authored the September 29, 2022 letter and November 1, 2022 JAQ. *See* ROA.538-544.

### N. AISD Still Refuses To Approve Strife's Service Dog

Yet, despite *four* VA doctors (Drs. Mann; Makulski; Miller; and Vandeven) attesting that Strife required a service dog for her physical and psychological disabilities, AISD *still* refused to approve "Inde." DeWalt notified Newar of this refusal in a January 13, 2023 letter. *See* ROA.1607-1608.

In her letter, DeWalt resorted—once again—to pretext to justify AISD's denial of Strife's service dog request. According to DeWalt, Dr. Makulski's January 10th letter did not suffice for AISD to approve "Inde" because it did not contain Dr. Vandeven's examination *notes*. *Id.*

Therefore, on January 13, 2023, Newar transmitted Dr. Vandeven's examination notes to DeWalt. *See* ROA.1147-1148.

Dr. Vandeven's examination notes confirm—indisputably—Strife's mobility impairments and "Inde's" mitigation of those impairments. *Id.* Nevertheless, AISD *still* refused to approve Strife's service dog request.

AISD claims it still refused to approve Strife's request because Dr. Vandeven failed to "provide any information regarding *potential alternative accommodations*." *See* 1559-1561 at 5 (emphasis added). Again, under the ADA/RA/TLC, Strife's doctors were *not* required to identify "potential alternative accommodations."[15] In short, this was simply another AISD pretext designed to justify its unlawful refusal to allow Strife to have and use "Inde" at work.

---

[15] *See infra*, at 39-40.

This is especially true because, throughout the "interactive process," AISD never proposed to or offered Strife *any* accommodation of her disabilities.[16]

### O. Strife Files Suit Against AISD

Therefore, on January 18, 2023, Strife filed suit against AISD in state court in Harris County, Texas. *See* ROA.1578-1593. In that lawsuit, Strife alleged that AISD had violated her rights under the TLC and Tex. Hum. Resources Code section 121.001 *et seq*.[17] On January 26, 2023, Strife filed an application for a temporary restraining order.

On January 27, 2023, the Harris County Ancillary District Court held a hearing on Strife's TRO application but recessed the hearing without a ruling.

On January 30, 2023, Strife non-suited her state court action.

On February 1, 2023, Strife filed the instant lawsuit. *See* ROA.1-43. On February 6, 2023, Strife filed a Motion for Temporary Restraining Order. *See* ROA.48-94

---

[16] Indeed, between September 22, 2022 and February 24, 2023, Smith and DeWalt did not convene the EAC to consider the extensive medical information Strife's four VA doctors—through Strife's counsel—had provided AISD during that five month period, despite the fact that the EAC was scheduled to meet every Friday. *See* ROA.1162-1359, at 107:17-19; 173:3-21; 182:8-16.

[17] Tex. Hum. Res. Code section 121.001 *et seq.* prohibits discrimination against "persons with disabilities," "service animals," and "assistance animals" in public facilities. *See* Tex. Hum. Res. Code section 121.003(c), (i).

On February 15, 2023, the District Court held a hearing on Strife's Motion for Temporary Restraining Order. The District Court denied Strife's Motion for Temporary Restraining Order but granted Strife's Motion for Expedited Discovery and scheduled a March 9, 2023 hearing on Strife's Motion for Preliminary Injunction. *See* RE1, at February 15, 2023 docket entry.

### P.    AISD Conditionally Approves Strife's Service Dog Request And Withdraws Its Medical Examination Demand To Avoid A Preliminary Injunction

On February 24, 2023—that is, nine days after the TRO hearing—AISD notified Strife via letter that it had approved her service dog request—albeit only conditionally and only for one year—and withdrew its demand that she submit to a medical examination by its retained physician. *See* ROA.1534-1537. AISD claims that it did so then because—it claims—after the February 15, 2023 TRO hearing, Strife provided it for ***"the first time"*** with "***new information"*** regarding her accommodation request.[18]  AISD further claims that the ***EAC*** decided to approve Strife's service dog request based on this "new information."

AISD's claims are demonstrably false.

After the February 15th TRO hearing, Strife did *not* provide AISD with any new information. Rather, Strife—through her counsel—simply reiterated what she, RPTSD, and her counsel had been advising it for the past *five months*: the

---

[18] *See* ROA.748-750, at 5-6 (emphasis added).

ADA/RA/TLC required AISD to allow her to have and use her service dog at work and barred it from subjecting her to a complete medical examination by its retained physician. *See* ROA.1468-1470.

Furthermore, as Smith admitted in deposition, AISD's **counsel** drafted the February 24, 2023 letter to Strife **before** the EAC convened on that date. *See* ROA.1162-1359, at 51:9-15; 176:2-177:15; 194:19-195:6.

In short, on February 24, 2023—approximately six months after Strife first requested it reasonably accommodate her disabilities by allowing her to have/use a service dog at work—AISD approved that request *solely* to avoid the District Court's entry of a preliminary injunction against it at the March 9, 2023 hearing.

## SUMMARY OF LEGAL ARGUMENT

The District Court erred in dismissing Strife's ADA, RA, and TLC reasonable accommodation, disability-based hostile work environment, and retaliation-based hostile work environment claims under Fed. R. Civ. P. 12(b)(6) because—under this court's Rule 12(b)(6) precedent—Strife's Second Amended Complaint contains sufficient facts to support such claims.

The District Court also erred in granting AISD's Motion for Summary Judgment on Strife's ADA, RA, and TLC disability-based discrimination and retaliation claims and on Strife's ADA interference claims. In derogation of Fed. R. Civ. P. 56, the District Court failed to credit substantial evidence establishing

that AISD constructively denied Strife a reasonable accommodation of her

disabilities because of its discriminatory animus against her and/or against service

animals and retaliated against and interfered with her for attempting to exercise

and enjoy her statutory rights to such an accommodation.

## **ARGUMENT**

### A.  The District Court Erred In Dismissing Strife's Reasonable Accommodation Claims Under Fed. R. Civ. P. 12(b)(6)

#### 1.  This Court Reviews The District Court's Dismissal *De Novo*

This court reviews *de novo* the District Court's dismissal of Strife's ADA,

RA, and TLC reasonable accommodation and hostile work environment claims

under Fed. R. Civ. P. 12(b)(6). *See Hamilton v. Dall. Cnty.*, 79 F.4th 494, 499 (5th

Cir. 2023).

The principles governing Rule 12(b)(6) motions are "well-established."  A

complaint "must contain sufficient factual matter…to state a claim to relief that is

plausible on its face." *See George v. SI Grp.*, 36 F.4th. 611, 619 (5th Cir. 2022)

(cleaned up). The complaint's factual allegations "must be taken as true and

viewed in the light most favorable to the plaintiff." *Id.*

A plaintiff "need ***not*** make out a *prima facie* case of discrimination under

*McDonnell Douglas* in order to survive a Rule 12(b)(6) motion to dismiss for

failure to state a claim." *See Thomas*, 2024 WL 2874367, at *4 (5th Cir. June 7,

2024) (emphasis added). Rather, a plaintiff need only plead facts that ***"support an inference"*** of discrimination/retaliation. *Id.*, at *5 (emphasis added).

A Rule 12(b)(6) motion is "viewed with disfavor and is rarely granted." *See Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) (cleaned up).

### 2. Strife pled facts supporting an inference that AISD denied her a reasonable accommodation of her disabilities

In her Second Amended Complaint, Strife asserted facts supporting an inference that AISD failed to reasonably accommodate her disabilities.

The ADA, RA, and TLC  require a covered employer—such as AISD—to make a "reasonable accommodation" of an employee's disabilities.[19] To prevail on an employment-based failure-to-accommodate claim under the ADA and the RA,[20] a plaintiff must prove: (1) she is a qualified individual with a disability; (2) her disability and its consequential limitations were known by the employer; and (3) the employer failed to make reasonable accommodations for such known limitations. *See Feist v. State of Louisiana*, 730 F.3d 450, 452 (5th Cir. 2013).

In her Second Amended Complaint, Strife asserted all three—in painstaking detail. Specifically, Strife asserted she is a "qualified individual with a disability."

---

[19] *See* 42 U.S.C. sections 12112(a), 12112(b)(5)(A); 29 U.S.C. section 794; Tex. Labor Code section 21.218.

[20] Strife's RA and TLC discrimination and retaliation claims are governed by the same legal standards as her ADA discrimination and retaliation claims. *See Kemp v. Holder*, 610 F.3d 231, 235 (5th Cir. 2010). Therefore, for purposes of judicial economy, Strife incorporates her ADA arguments by reference.

*See* RE4, at para. 108. She further asserted that AISD knew of her physical and psychological disabilities and their limitations. *Id.*, at paras. 44; 47-51; 55; 75-76. Finally, she asserted AISD failed to reasonably accommodate these known limitations. *Id.*, at paras. 88-91. Therefore, Strife's Second Amended Complaint fully supports an inference that AISD violated her ADA/RA/TLC right to "reasonable accommodation." *See Thomas*, *supra*.

### 3. The District Court's Errors

The District Court dismissed Strife's reasonable accommodation claims because it held Strife "has not alleged any facts that permit the Court to infer that AISD's six-month delay in granting her accommodation made that accommodation unreasonable." *See* RE3, at 7. This assertion is untrue.

In her Second Amended Complaint, Strife alleged:

> [AISD's] "knowing, intentional, and purposeful refusal to reasonably accommodate [her] disabilit(ies) between August 30, 2022 and February 24, 2023, by allowing her to have and use a service dog at work *seriously endangered and jeopardized [her] physical and psychological health and safety and otherwise forced her to work at AISD under dangerous, suboptimal conditions.*[21]

Strife specified such "serious endangerment" and "jeopardy" included:

> a) subjecting [her] to a substantial risk of falling and the attendant substantial risk of major bodily injury (e.g.

---

[21] *See* RE4, at para. 89 (emphasis added).

> death; concussion; fractured extremities; etc.); and b)
> uncontrolled PTSD, severe anxiety, and major depression
> and the attendant harm to her health and well-being.[22]

Strife further alleged this "endangerment" "stemmed from the fact" that:

> absent a service dog at work, [she] was prone to losing
> her balance and falling and would be unable to cope with
> her PTSD and other disabling psychological conditions.[23]

Under this court's precedent, these assertions—coupled with the Second Amended Complaint's detailed account of AISD's months-long stonewalling of Strife's service dog application—suffice to support an inference that AISD's protracted delay/constructive denial of her service dog request violated her rights to a reasonable accommodation. *See Loulseged v. Akzo Nobel Inc.*, 178 F. 3d 731, 737 n. 6 (5th Cir. 1999) ("An employer that dragged its feet in [the interactive process] could force the employee to work under suboptimal conditions…An employer's delaying of the process under those conditions might create liability. There may be other situations in which there is a pressing need to rapidly address the accommodation issue comprehensively."); *Groome Resources Ltd. v. Parish of Jefferson*, 234 F.3d 192, 199 (5th Cir. 2000) ("[Denial [of a reasonable accommodation] can be both actual or constructive" and an ***"indeterminate delay***

---

[22] *Id.*, at para. 90.

[23] *Id.*, at para. 90.

***has the same effect as an outright denial.***")[24]; *Calero-Cerezo v. U.S. Dept. of Justice*, 355 F.3d 6, 24 (1st Cir. 2004) ("[A] factfinder might well conclude that, in the face of plaintiff's increasingly desperate requests for an accommodation, the defendants simply stonewalled — going so far as to deny, in the face of substantial medical evidence, that plaintiff suffered a disability at all.").

Indeed, the District Court itself acknowledged that, "even when an employer ultimately provides the requested accommodation, undue delay in granting that accommodation may constitute an ADA violation…" *See* RE3, at 6, citing *Schilling v. La. Dept. of Transp. & Dev.*, 662 F.App'x 243, 247 (5th Cir. 2016) (unpublished). However, the District Court elided this legal truism by claiming Strife's Second Amended Complaint alleges only: 1) AISD's protracted delay/constructive denial of her service dog ***"possibl[y]"*** caused her harm; and 2) Strife suffered no actual harm because she "had been working for AISD for approximately ten years before she requested an accommodation for her disability…" and that "[d]uring the 6 months that AISD evaluated her accommodation request, [Strife] simply worked under the ***same conditions that she had previously***…" *See* RE3, at 7 (emphasis added). Again, the District Court's assertions are untrue.

---

[24] The District Court failed to cite either *Loulseged* or *Groome*, despite Strife's reliance on both in her responses to AISD's Motion For Partial Dismissal and AISD's Motion for Summary Judgment.

First, as the above-quoted paragraphs of her Second Amended Complaint attest, Strife alleged that, from August 30, 2022 through February 24, 2023, AISD unjustifiably delayed and constructively denied her service dog and that this delay/denial ***"substantially"*** harmed her. *See* RE4, at para. 114 (emphasis added). Strife alleged that such "substantial" harm included:

> A) continuously refusing to reasonably accommodate [her] disabilities; b) seriously endangering and jeopardizing her physical and psychological health and safety by refusing to allow her to have and use a service dog at work; c) forcing her to work at AISD under dangerous, suboptimal conditions; and d) attempting to force her to submit to a medical examination by its retained, unqualified medical provider as a condition to being allowed to have and use a service dog at work

*Id.*, at paras. 92, 94.

Second, the District Court's assertion that, during the six months AISD delayed approving/constructively denied Strife's service dog application, Strife "simply worked under the same conditions that she had previously…" *nowhere* appears in the Second Amended Complaint. Therefore, the District Court

manufactured this "fact" out of whole cloth.[25] Even more problematic, the "cloth" the District Court used was ***AISD's*** Motion For Partial Dismissal.[26]

The District Court's manufacturing of this "fact" or drawing this factual inference in AISD's favor contravenes Rule 12(b)(6). Rule 12(b)(6) required the District Court to "accept all well-pleaded facts as true," view them "in the light most favorable to" Strife, and *not* resolve any factual disputes—especially, not in AISD—the movant's—favor. *See Hamilton v. Promise Healthcare*, No. 23-30190, 2023 WL 6635076, at *4  (5th Cir. Oct. 12, 2023) (factual disputes "appear better suited for resolution by summary judgment than on a Rule 12(b)(6) motion" because the Fifth Circuit is a "court of review, not first review"); *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019) ("A court…inappropriately heightens the pleading standard by subjecting a plaintiff's allegations to a rigorous factual or evidentiary analysis under the McDonnell Douglas framework in response to a motion to dismiss…Such inquiries are better suited to summary judgment.").

### B. The District Court Erred In Dismissing Strife's Hostile Work Environment Claims

---

[25] The summary judgment evidence belies this "fact" because it demonstrates that Strife's working conditions drastically changed—for the worse—beginning in August 2022 when she became a Project Analyst. At that time, Strife had to climb a steep bank of stairs to enter her office, which—because of her mobility impairments—presented a serious fall risk. *See* ROA.1113, at 39:7-40:2; 42:14-43:7; 45:25-46:13; ROA.1138-1140.

[26] *See* ROA.721-729, at 726.

The District Court also erred in dismissing Strife's ADA, RA, and TLC disability-based and retaliatory-based hostile work environment claims under Rule 12(b)(6).

### 1. Strife Pled Facts Supporting An Inference That AISD Subjected Her To A Hostile Work Environment

To establish a disability or retaliatory-based hostile work environment under the ADA, RA, and TLC, a plaintiff must show: (1) she belongs to a protected group; (2) plaintiff was subjected to unwelcome harassment; (3) the harassment complained of affected a term of employment; and (4) the employer knew or should have known of the harassment and failed to take, prompt remedial action. *See Patton v. Jacobs Eng'g Grp., Inc.*, 874 F. 3d 437, 445 (5th Cir. 2017); *Flowers v. Southern Regional Physician Serv.*, 247 F.3d 229, 235-236 (5th Cir. 2001).[27]

In paragraphs 44 through 101 of her Second Amended Complaint, Strife detailed AISD's approximately six-month-long campaign of harassment based on its discriminatory animus and retaliation against her for attempting to vindicate her right to such an accommodation—including her supervisor (Smith) and AISD's legal counsel's (DeWalt) repeated, illegal attempts to force her to undergo a

---

[27] This court has recognized a claim against an employer for a retaliatory hostile work environment. *See Williams v. Administrative Review Board,* 376 F.3d 471, 477 (5th Cir. 2004)

*complete* medical examination by its retained physician and its protracted

stonewalling of her service dog accommodation request. *See* RE4, at paras. 44-101.

 In paragraphs 92 and 95, Strife—although not required to do so—expressly

alleged that these acts satisfied the *prima facie* case elements of a "disability-

based" and "retaliation-based" "hostile working environment." *Id.*, at paras. 92, 95.

Therefore, Strife sufficiently pled facts "supporting an inference" of disability-

based and retaliation-based hostile work environment. *See Thomas*, *supra*.

### 2.  The District Court's Errors

The District Court dismissed Strife's hostile work environment claims

because it held that "[Strife] worked under the same conditions and with the same

disabilities that she had for years prior" and did "not provide any specific instances

of harassment or include detail on the severity or pervasiveness of harassment by

any employees."[28]

The District Court's assertion that Strife "worked under the same

conditions…that she had for years" is—again—untrue. In her Second Amended

Complaint, Strife alleged that her working conditions worsened when she became

a Project Analyst in AISD's Human Resources department starting in the 2022-

2023 school year. Specifically, she alleged that, "between August 30, 2022 and

---

[28] *See* RE3, at 8.

February 24, 2023, AISD "forced her to work…under ***dangerous suboptimal***

***conditions***." *See* RE4, at para. 89 (emphasis added). She further alleged that these

"dangerous, suboptimal conditions" included ***"a substantial risk of falling and the***

***attendant substantial risk of major bodily injury (e.g. death; concussion;***

***fractured extremities; etc."***). *Id.*, at para. 90 (emphasis added).

The District Court's assertion that Strife failed to "provide any specific

instances of harassment or include detail on the severity or pervasiveness of

harassment by any employees" is equally untrue. Again, in paragraphs 44 through

101 of her Second Amended Complaint, Strife painstakingly detailed AISD's

pervasive acts of harassment, including repeatedly attempting to force her to

submit to an illegal medical examination by its retained physician. *Id.*, at paras. 44-

101.

### C. The District Court Erred In Granting AISD Summary Judgment on Strife's Disability Discrimination Claim

#### 1. Strife Established A *Prima Facie* Case Of Disability Discrimination

The District Court also erred in granting AISD summary judgment on

Strife's disability discrimination claims under the ADA, RA, and TLC.

Strife raised a genuine issue of material fact that AISD subjected her to

disability discrimination.[29] A plaintiff establishes a *prima facie* case of disability

---

[29] This Court likewise reviews the District Court's summary judgment holding *de novo*—with all facts and factual inferences viewed in the light most favorable to Strife. *See Feist v. State*, 730

discrimination by showing she (1) has a disability; was regarded as disabled; or has a record of a disability; (2) was qualified for the job; and (3) was subjected to an adverse employment decision on account of her disability. If the employee makes that showing, a presumption of discrimination arises, and the employer must articulate a legitimate non-discriminatory reason for the adverse employment action. The burden then shifts to the plaintiff to produce evidence from which a jury could conclude that the employer's articulated reason is pretextual. *See Cannon v. Jacobs Field Servs. N. Am., Inc.,* 813 F.3d 586, 590 (5th Cir. 2016).

In its summary judgment briefs, AISD did not dispute the first two elements: 1) Strife has a disability; and 2) Strife was qualified for her job. Moreover, during the TRO hearing, AISD conceded Strife is a "qualified individual with a disability."[30] Therefore, AISD waived any argument as to these elements.

Strife raised a genuine issue of material fact that AISD subjected her to an "adverse" employment decision.

In *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 144 S.Ct. 967, 218 L.Ed. 2d 322 (2024), the Supreme Court held that a Title VII discrimination plaintiff need prove only that her employer "discriminated" against her in the

---

F.3d at 452.

[30] *See* ROA.1833 (emphasis added) ("***She is a qualified individual with a disability. On the record, she is a qualified individual with a disability.***").

"terms and conditions" of her employment—which, the Court held, means she

suffered "some ***disadvantageous*** change in an employment term or condition." *See*

*Muldrow*, 144 S.Ct. at 354 (emphasis added). The Court held that a Title VII

plaintiff need not prove she suffered "economic" or "tangible" harm or that the

harm suffered was "serious," "substantial," "material," or a "similar" adjective. *Id.*,

and at n. 2. Consistent with *Muldrow*, this court has held that a Title VII

discrimination plaintiff need not prove she suffered an  "economic" or "tangible"

harm. *See Hamilton v. Dallas County*, 79 F.4th 494, 501 (5th Cir. 2023) (*en banc*).

The ADA's "discrimination" provision is much broader and contains much

greater protections than Title VII's. *Compare* 42 U.S.C. section 12112(b) with 42

U.S.C. section 2000e-2(a). For example, the ADA requires a covered employer to

make "reasonable accommodations" for a disabled employee, while Title VII

contains no general "reasonable accommodation" requirement. *See* 42 U.S.C.

section 12112(b)(5).[31] Additionally, the ADA bars a covered employer from

"requir[ing] a medical examination…" or even "mak[ing] inquiries of"

an employee regarding whether the employee is disabled or regarding the nature or

severity of the disability—except under limited circumstances[32]—while Title VII

---

[31] *But see* Title VII requires an employer to "reasonably accommodate" an employee or
prospective employee's religious observance or practice, provided such accommodation works
no "undue hardship" on the employer's business. *See* 42 U.S.C. section 2000e(j).

[32] *See* 42 U.S.C. section 12112(d)(4)(A)

does not. Therefore, the level of "adversity" an ADA plaintiff must show is *lower* than what a Title VII plaintiff must show.

Assuming *arguendo*—but in no way conceding—*Muldrow* and/or *Hamilton* define/delimit "adversity" under the ADA, Strife established a genuine issue of material fact that she was "disadvantaged" by AISD's protracted delay/ constructive denial of her request to work with her service dog. Such "disadvantage" included being forced to work *daily* under conditions that seriously endangered her physical and psychological health and safety (e.g. falls/concussions and unmitigated PTSD/depression). This suffices to establish "adversity" under *Muldrow* and *Hamilton. See Muldrow*, 144 S.Ct. at 354 and at n. 2; *Hamilton*, 79 F.4th at 500, citing approvingly *Peterson v. Linear Controls, Inc.*, 757 F.App'x 370, 373 (5th Cir. 2019) (per curiam), *cert. dismissed* 140 S.Ct. 2841 (2020) (forcing black employees to work outside without water while allowing white employees to work inside with air conditioning constitutes adversity).

Additionally, AISD's repeated attempts to force Strife to submit to a complete medical examination by its retained-doctor—in violation of the ADA and its own policy—is, as a matter of law, a "disadvantageous change" in Strife's employment conditions. *See* 42 U.S.C. section 12112(d)(4)(A).

    **2.  Strife Raised A Genuine Issue Of Material Fact That AISD's "Legitimate, Non-Discriminatory" Reason(s) For Constructively Denying Her Service Dog Request Are Pretextual**

Strife has raised a genuine issue of material fact that AISD's putative "legitimate, non-discriminatory" reason(s) for delaying/constructively denying her service dog request are a pretext for discriminating against her based on her disabilities.

### a. AISD's Assertion That Strife Delayed The "Interactive Process" Is False

In the District Court, AISD asserted that its "legitimate, non-discriminatory" reason for delaying/constructively denying Strife a service dog was "primarily…[Strife's] delay in getting AISD the requisite documents they [sic] needed to make a final decision on her service animal." *See* ROA.760.

Yet, the uncontroverted evidence belies AISD's assertions. Specifically, it establishes that, on **September 26, 2022**, Strife tendered to AISD Dr. Miller's September 22, 2022 letter attesting to her need for a service dog to mitigate her PTSD/major depression. On **September 27, 2022**, Smith confirmed that Miller's letter was "***exactly*** what [AISD] needs…" *See* ROA.1557 (emphasis added); ROA.1256-1257, at 95:24-96:19; ROA.1116, at 27:25-28:14, at Exhibit 4. However, Smith stated AISD "need[ed]" *" **a Medical Doctor"**—*and, preferably, one "board-certified"—to provide that letter. *See* ROA.1557.

AISD's demand that Strife tender a letter from a medical doctor contravened the ADA. Although—under certain circumstances (not present here)—an employer may require an employee to tender documentation from an "appropriate health care

professional," the ADA nowhere requires that such a professional be a ***medical*** doctor. On the contrary, such professionals may include non-medical doctors, such as psychologists, nurses, physical therapists, occupational therapists, speech therapists, vocational rehabilitation specialists, licensed mental health professionals.[33]

As detailed above, Dr. Miller is a Doctor of Pharmacology with a specialization in psychiatric pharmacology. *See* ROA.1833. Under the VA's protocols, Dr. Miller is authorized to diagnose and treat veterans—such as Strife—with psychological conditions, such as PTSD, depression, and anxiety disorder. In fact, Dr. Miller had treated Strife for PTSD, depression, and anxiety disorder since 2007. *Id.* Therefore, AISD's refusal to credit Dr. Miller's September 22nd letter because she is not an M.D. violated the ADA/RA.

In any event, Strife complied with Smith's illegal demand by tendering to AISD on September 29th a letter from a medical doctor, Dr. Gurtej Mann—her VA treating psychiatrist. *See* ROA.1833; 1532; ROA.765-886, at 28:16-25. In that letter, Dr. Mann stated Strife suffers from PTSD, TBI, and osteopenia. Dr. Mann

---

[33] *See,* e.g., EEOC "Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the ADA," at question 6, available at *https://www.eeoc.gov/laws/guidance/enforcement-guidance-reasonable-accommodation-and-undue-hardship-under-ada*; EEOC "Enforcement Guidance on the ADA and Psychiatric Disabilities," at question 14, available at *https://www.eeoc.gov/laws/guidance/enforcement-guidance-ada-and-psychiatric-disabilities*, This court considers the EEOC's ADA "Enforcement Guidances" persuasive authority. *See, e.g., Schilling v. La. Dep't. of Transp. & Dev.*, 662 F. App'x. 243, 246 (5th Cir. 2016).

also opined that a service dog would be "invaluable" to her "mental and physical health…" *Id.* Therefore, by AISD's own admission, by **September 29, 2022**—at the latest—Strife had provided it with "exactly" what it had requested: a medical doctor's certification of her need for a service animal. Nevertheless, AISD still refused to approve her accommodation request.

In the District Court, AISD also asserted it did not approve Strife's service dog accommodation until February 24, 2023, because—it claimed—it "did not receive information concerning viable alternative accommodations until February 17, 2023." *See* ROA.760. This assertion is demonstrably false: in her deposition, Smith admitted AISD refused to approve Strife's service dog request because it deemed her—without any evidence—to be an "emotional support animal," not a service animal.[34]

Yet, even if AISD's assertion were true, it reflects a fundamental misapprehension/contortion of the ADA/RA's "interactive process." In the "interactive process," Strife and her doctors were *not* obligated to propose to AISD "alterative" or "additional" accommodations. They were only obligated to propose "*a*" reasonable accommodation. *See  Riel v. Electronic Data Systems Corp.*, 99

---

[34] AISD's "emotional support animal" claim—which, again, it did not raise in the District Court and, therefore, has waived—lacked any factual support because, on September 5, 2022, RPTSD had certified that "Inde" is a "fully trained ***service dog***." *See* ROA.1833 (emphasis added).

F.3d678, 684 (5th Cir. 1996) (cleaned up) (emphasis added). They did so—

repeatedly: a service dog.

Once Strife and her doctors proposed "a" reasonable accommodation (i.e.

service dog), AISD was obligated to provide her with that "preferred"

accommodation, unless AISD could demonstrate that this "preferred"

accommodation posed an "undue hardship." *Id.*

AISD *concedes* Strife's service dog did not pose *any*—let alone, an

"undue"—hardship.

Therefore, by refusing to approve Strife's service dog application for *five*

more months—during which time AISD, by its own admission, never proposed

any other accommodation—AISD violated the ADA, RA, and TLC.

### b.  AISD's Attempted Cover-Up of Its Discrimination/Retaliation Against Strife Evidences Pretext

AISD's pretext is further evidenced by its attempt to cover-up its

discrimination and retaliation against Strife, including its stonewalling of her

service dog request. AISD asserts that, on February 24, 2023, the *EAC* approved

Strife's service dog request after receiving *"new information"* from Strife and her

doctors.

However, in her deposition, Smith revealed that AISD's *legal counsel*

drafted the February 24, 2023 letter approving Strife's service dog request *before*

the EAC even convened on February 24th to "decide" whether to approve her accommodation request.

As demonstrated above, AISD's lies and attempted cover-up were designed to elide the fact that AISD approved "Inde" on February 24, 2023, solely to avoid the District Court's entry of a preliminary injunction against it at the March 9, 2023 hearing.

AISD's lies and attempted cover-up evidence pretext. *See Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 147 (2000) ("[The trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as "'affirmative evidence of guilt.'"). Unfortunately, the District Court failed to consider—let alone, credit—AISD's lie and cover-up in resolving AISD's summary judgment motion.

### c. AISD's Disparate Treatment of Disabled Employees Requiring Service Animals Evidences Pretext

AISD's pretext is further evidenced by its disparate treatment of disabled employees requiring psychological therapy animals in the workplace.

Before delaying and constructively denying Strife's service dog application, AISD denied at least one other employee's service dog accommodation request.[35] In that case, AISD also claimed that the dog was an "emotional support animal," not a "service animal." *Id.*

By contrast, AISD allows ***able-disabled*** employees to have and use dogs in the workplace. *See* ROA.1360-1385, at 90:25-93:23.

Such disparate treatment constitutes evidence of pretext. *See Laxton v. Gap*, 333 F.3d 572, 578 (5th Cir. 2003) ("A plaintiff may establish pretext…through evidence of disparate treatment…").

### d. AISD's Bad-Faith In The "Interactive Process" Evidences Pretext

AISD's bad-faith conduct of the ADA/RA/TLC "interactive process" further evidences pretext. AISD's bad-faith is reflected in the following acts: 1) its demand that a "medical doctor" support Strife's accommodation request; 2) its attempted violation of Strife's HIPAA rights; 3) its repeated illegal demands that Strife submit to a complete medical examination by its retained physician; 4) its unjustified stonewalling of her accommodation request for approximately five

---

[35] That employee—who was acting *pro se*—filed an EEOC Charge against AISD for ADA discrimination and retaliation. AISD resolved that employee's Charge in a pre-suit mediation. ROA.1433-1437.

months; and 5) its admitted failure to proffer Strife any alternative accommodations.

Furthermore, between September 22, 2022 and February 24, 2023 (i.e. five months), Smith and DeWalt never provided—and arguably hid from— the EAC, which had standing Friday meetings—the ***substantial*** medical and other information that Strife, her VA doctors, her counsel, and RPTSD tendered in support of her accommodation request, including Dr. Vandeven's January 10, 2023 examination of Strife/"Inde."[36]

AISD's clear bad-faith in the "interactive process" constitutes pretext. *See Jenkins v. Cleco*, 487 F.3d 309, 316 (5th Cir. 2007) (cleaned up) ("When an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee, the employer violates the ADA."); *Humphrey v. Memorial Hospitals Ass'n*, 239 F.3d 1128, 1138 (9th Cir. 2001) ("[A]n employer fails to engage in the interactive process as a matter of law where it rejects the employee's proposed accommodations…and offers no practical alternatives.").

### e.  AISD's Violation Of Its Medical Examination Policy Evidences Pretext

Finally, AISD's violation of its own medical examination policy also

---

[36] *See* ROA.1162-1358, at 173:3-174:13; 182:8-19.

evidences pretext. As previously noted, AISD's internal policy provides that it can require an employee to submit to a medical examination *only* if "information received…indicates the employee has a physical or mental impairment that interferes with the employee's ability to perform **essential** job functions; or poses a **direct threat** to the health or safety of the employee or others…" *See* ROA.1565-1569 (emphasis added).

On November 3, 2022, Smith determined that Strife *could* perform her *essential* Project Analyst job duties with or without reasonable accommodation. *See* ROA.1571; ROA.1188-1191, at 27:5-30:5. AISD has no evidence—and, therefore, has never contended—that Strife posed *any*—let alone, a "direct"— threat to herself or anyone else.

Therefore, AISD violated its own policy in requiring Strife to submit to a medical examination by its retained physician. Such a violation evidences pretext. *See Machinchick v. PB Power, Inc.*, 398 F.3d 345, 354 n. 29  (5th Cir. 2005) (Employer's failure to follow an internal policy can raise an inference of pretext).

### 3. Strife Raised A Genuine Issue Of Material Fact That AISD's Discriminatory Animus Was A "Motivating Factor" For Its Discrimination Against Her

Strife raised a genuine issue of material fact that AISD's discriminatory animus was a "motivating factor" for its discrimination against her.[37]

---

[37] The ADA's causation standard is "motivating factor," not "sole cause." *See Pinkerton v.*

As detailed above, Strife has established a *prima facie* case that AISD subjected her to disability-based discrimination in violation of the ADA, RA, and TLC. Strife has also adduced substantial evidence of pretext.

Strife's *prima facie* case of discrimination—combined with the substantial pretext evidence—suffices to establish a genuine issue of material fact that AISD's discriminatory animus against service animals motivated its delay/constructive denial of her service dog request. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (cleaned up) ("[T]he trier of fact may still consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual.") *Stennett v. Tupelo Pub. Sch. Dist.*, 619 F. App'x 310, 316 (5th Cir. 2015) ("Stennett's strong showing of a *prima facie* case with respect to each position, combined with her other evidence supporting an inference of pretext…render[s] summary judgment inappropriate.").

### 4. The District Court's Errors

The District Court's Order granting AISD summary judgment on Strife's ADA, RA, and TLC disability discrimination claims is also bedeviled by several errors.

---

*Spellings*, 529 F.3d 513, 519 (5th Cir. 2008).

First, the District Court erroneously held "there is no evidence that [Strife's] accommodation request was ever denied." *See* RE3, at 11. This holding contravenes this circuit (e.g. *Loulseged* and *Groome*) and other circuit precedent that a protracted delay in approving a disabled individual's accommodation request may constitute a ***constructive*** denial.[38] It also reflects the District Court's impermissible weighing of the delay/constructive denial evidence—in violation of Fed. R. Civ. P. 56.

    Second, the District Court erroneously reprised its same assertion—made in dismissing Strife's reasonable accommodation claims—that "the delay in granting [Strife's service dog] did not at all alter the 'terms, conditions or privileges' of [Strife's] employment, as [Strife] continued working under the same conditions and with the same psychological and physical ailments that she had for prior years." *See* RE3, at 11. As noted above, this assertion is belied by the evidence that Strife's working conditions materially worsened when she became a Project Analyst in August 2022 because she had to climb a steep stair bank to enter

---

[38] *See*, e.g., *Perkins v. City of New York*, 2023 WL 370906, at *9 (2nd Cir. 2023) (employer's delay in responding to employee's request for reasonable accommodation violated the ADA); *Battle v. United Parcel Serv., Inc.*, 438 F.3d 856, 862–863 (8th Cir. 2006) (affirming jury verdict that employer failed to engage in the interactive process in good-faith where it took at least two months to grant employee's request for reasonable accommodation); *Calero-Cerezo v. U.S. Dept. of Justice*, 355 F.3d 6, 24 (1st Cir. 2004) ("[A] factfinder might well conclude that, in the face of plaintiff's increasingly desperate requests for an accommodation, the defendants simply stonewalled…").

her office—a climb that, because of her severe mobility impairments, was extremely perilous.

Third, the District Court erroneously held that Strife failed to adduce any evidence she "suffered anything beyond a *de minimis* injury." *See* RE3, at 11. Again, even assuming *arguendo Muldrow* and/or *Hamilton* apply to the ADA/RA, Strife established a genuine issue of material fact that AISD's protracted delay and constructive denial of her service dog caused her to suffer more than *de minimis* harm: namely, being forced to work *daily* under conditions that seriously endangered her physical safety and psychological health.

Finally, the District Court erroneously held that AISD's repeated attempts to force her to submit to a complete medical examination by its retained physician was not "adverse" because AISD ultimately "withdrew" that demand. *See* RE3, at 11-12. Yet, this holding elides the law and the record.

First, under the ADA, AISD was barred from even ***"requir[ing]"*** Strife to submit to such an examination. *See* 42 U.S.C. section 12112(d)(4)(A) (emphasis added). The ADA does not define the term, "require." However, Merriam-Webster's Dictionary defines that term as: "to claim or ask for by right or authority" and "to call for as suitable or appropriate."[39]

---

[39] *See* Merriam-Webster Dictionary, available at https://www.merriam-webster.com/dictionary/require

Moreover, nowhere does the ADA specify that a "medical examination" must actually *occur* in order for 42 U.S.C. section 12112(d)(4)(A) to be violated. Indeed, had Congress intended that, it would have used the verb, ***"conduct"***—as it did in 42 U.S.C. section 12112(d)(2), which governs pre-employment medical examinations and inquires.[40]

Second, even assuming *arguendo Muldrow* and *Hamilton* apply to the ADA, an employer's ***repeated*** attempts to force a disabled employee to submit to an invasive medical examination by its retained physician—in violation of the ADA and its own policy—are sufficiently disadvantageous to constitute an "adverse" action.

Third, the District Court's Order elides the fact that AISD only "withdrew" its demand that Strife submit to this illegal medical examination after she objected to that demand for ***months*** and, even then, only after she filed ***two*** lawsuits and it faced the threat of having a preliminary injunction entered against it.

### D. The District Court Erred In Granting AISD Summary Judgment On Strife's Retaliation Claims

---

[40] *See* 42 U.S.C. section 12112(d)(2) (emphasis added) ("Except as provided in paragraph (3), a covered entity shall not ***conduct*** a medical examination or make inquiries of a job applicant as to whether such applicant is an individual with a disability or as to the nature or severity of such disability.").

Contrary to the District Court's determination, Strife also raised a genuine issue of material fact that AISD retaliated against her for engaging in ADA/RA/TLC-protected activity.

### 1. Strife Established A Genuine Issue Of Material Fact That AISD Retaliated Against Her For Her Protected Activity

An employee establishes a *prima facie* case of retaliation by showing (1) engagement in an activity protected by the ADA, RA, and TLC, (2) an adverse employment action, and (3) a causal connection between the protected act and the adverse action. If the employee establishes a *prima facie* case, the employer must advance a legitimate, non-discriminatory reason for the adverse employment action. If the employer advances such a reason, the employee must adduce sufficient evidence that the proffered reason is a pretext for retaliation. The employee must show that "but for" the protected activity, the adverse employment action would not have occurred. *See Tabatchnik v. Continental Airlines*, 262 F. App'x 674, 676 (5th Cir. 2008).

First, it is undisputed Strife engaged in ADA/RA/TLC-protected activities: 1) requesting, in good faith, a reasonable accommodation of her disabilities[41]; 2) engaging counsel—both RPTSD and her own attorney—to assist her with

---

[41] *See Tabatchnik,* 262 F. App'x at 676 ("It is undisputed that making a request for a reasonable accommodation under the ADA may constitute engaging in a protected activity.")

vindicating those rights[42]; and 3) filing a Charge of Discrimination with the EEOC/Texas Workforce Commission.[43]

Second, Strife raised a genuine issue of material fact that AISD subjected her to "adverse" retaliatory employment actions, including: 1) intentionally delaying /constructively denying her service dog; and 2) repeatedly requiring her to submit to a complete medical examination by its retained physician—an examination that violated both the ADA and its own policy. For the reasons previously explained, these actions are "adverse" under *Muldrow* and *Hamilton*-- assuming *arguendo* those cases apply. Moreover, they are "adverse" under the Supreme Court's decision in *Burlington N. v. Santa Fe. Ry. Co. v. White*, 548 U.S. 53, 57 (2006)—which *Muldrow* does not purport to overrule—as they "could well dissuade a reasonable worker from making or supporting a charge of discrimination."

Third, Strife established a "causal connection" between her protected activities and AISD's "adverse" actions. Such a "causal connection" is evidenced by, *inter alia*, the extremely close timing between Strife's protected-activities and AISD's retaliatory actions. *See*, e.g., *Haire v. Board of Supervisors of Louisiana*

---

[42] *See Connell v. Bank of Boston*, 924 F.2d 1169, 1179 (1st Cir. 1991) ("It is self-evident that by retaining an attorney plaintiff had engaged in an activity protected under the Act.").

[43] *See* 42 U.S.C. section 12203(a).

*State University Agricultural & Mechanical College*, 719 F.3d 356, 368 (5th Cir. 2013) (causation established by a "roughly three month" gap between protected activity and retaliation).

### 2. Strife Established A Genuine Issue Of Material Fact That AISD's "Legitimate, Non-Retaliatory" Reasons Are Pretexts

Strife also established a genuine issue of material fact that AISD's "legitimate" reasons are merely pretexts for retaliation.

In defending against Strife's retaliation claims, AISD proffered the same purported "legitimate" reasons as it did in defending against her discrimination claims. Therefore, for the same reasons that AISD's "legitimate" reasons are pretexts for discrimination, they are pretexts for retaliation.

### 3. AISD's Retaliatory Animus Was A "But For" Cause Of Its Adverse Actions

Strife established a genuine issue of material fact that AISD's retaliatory animus against her for requesting a reasonable accommodation of her disabilities, engaging counsel to seek legal redress, and filing an EEOC/TWC Charge was a "but-for" cause of its "adverse" actions against her.

To prove "but for" causation, Strife need not prove "sole" or even "primary" cause. *See Bostock v. Clayton County, Georgia*, 140 S.Ct. 1731, 1739 (2020); *Abdallah v. Mesa Air Group*, 83 F.4th 1006, 1015 (5th Cir. 2023).

Strife adduced substantial evidence of "but-for" causation, including the evidence supporting her *prima facie* case and the extensive pretext evidence—which is incorporated herein by reference[44]—and the extremely close timing between her ADA/RA-protected activities and AISD's retaliation.

### 4. The District Court's Errors

The District Court also erred in granting AISD summary judgment on Strife's retaliation claims.

The District Court held AISD's purported "legitimate" reasons for constructively denying Strife's service dog request were not pretexts for retaliation because—the District Court stated—Strife had not demonstrated AISD harbored any "retaliatory motive" and merely "takes issue with how AISD engaged in the interactive process…[45] The District Court's holding is erroneous.

As detailed above, the District Court failed to address—let alone, credit— *virtually* all of Strife's pretext evidence. That evidence—delineated above— includes AISD's prevarications and attempted cover-up of its extensive stonewalling of Strife's accommodation request; its repeated illegal demands that she submit to a complete medical examination by its retained physician in violation of its *own* policy and the ADA; its violations of its own internal policies and

---

[44] *See supra*, at 36-44

[45] *See* RE3, at 13 n. 4.

procedures; and its disparate treatment of Strife relative to non-disabled employees.

### E. The District Court Erred In Granting Summary Judgment On Strife's ADA "Interference" Claim

Finally, the District Court also erred in granting AISD summary judgment on Strife's ADA "interference" claim.

42 U.S.C. 12203(b) provides:

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed…any right granted or protected by this chapter.

As Strife argued in the District Court, this right is separate and independent from the ADA's "retaliation" provision. *See* 42 U.S.C. section 12203(a); *Menoken v. Dhillon*, 975 F.3d 1, 9 (D.C. Cir. 2020) ("The statute's text and structure reinforce that retaliation and interference are distinct protections. It would unnecessarily render section 12203(b) surplusage if we were to treat it as nothing more than another prohibition on retaliation.").

This court has never defined the elements of an ADA "interference" claim. However, at a minimum, the provision means what it says: an employer may not interfere with an employee "on account of…her having exercised or enjoyed…" her rights under the ADA. *See Dahda v. U.S. Roosevelt Rico Dahda*, 138 S.Ct. 1491, 1497 (2018) ("The statute means what it says.").

Strife adduced substantial evidence that AISD engaged in such interference by, *inter alia*, delaying/constructively denying her service dog accommodation for almost six months and repeatedly attempting to force her to undergo an invasive medical examination by its retained physician—in violation of its own policy and the ADA. These actions were designed by AISD to interfere with—if not, intimidate—Strife for exercising and attempting to "enjoy" her ADA-protected rights.

The District Court granted AISD summary judgment on Strife's "interference" claim because—it claimed—Strife "fail[ed] to point to specific evidence in the record that shows how Strife interfered with her rights under the ADA…"[46] Given the extensive "interference" evidence recounted above, the District Court's assertion is clearly erroneous.

## CONCLUSION

For these reasons, Plaintiff/Appellant, Alisha Strife, respectfully requests this Court reverse the District Court's June 13, 2024 Order and remand this case for a trial by jury.

---

[46] *See* RE3, at 16-17.

Respectfully submitted,


*/s/ Scott Newar*
SCOTT NEWAR
Texas Bar Number 14940900
440 Louisiana, Suite 900
Houston, Texas 77002
Telephone: (713) 226-7950
Fax: (713) 226-7181
E-Mail: newar@newarlaw.com

ATTORNEY FOR APPELLANT,
ALISHA STRIFE


Of Counsel

Dennis Herlong
Texas Bar No. 09510500
440 Louisiana, Suite 900
Houston, Texas 77002
Telephone: 713-228-9222
Fax: 713-228-9226
E-Mail: lawfirm@dennisherlong.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on August 26, 2024, I served Appellant's Brief upon Aldine Independent School District, via the 5th Circuit's e-filing system in accordance with Rule 25 of the Federal Rules of Appellate Procedure.

*<u>/s/ Scott Newar</u>*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the instant Appellant's Brief complies with this Court's type-volume limitations. This Brief contains a total of 11,314 words and is 55 pages long using Times New Roman 14 point type (body) and 12 point type (footnotes).

*<u>/s/ Scott Newar</u>*