NO. 24-20269

## UNITED STATES COURT OF APPEALS
## FIFTH CIRCUIT

### ALISHA STRIFE
**Plaintiff — Appellant**

v.

### ALDINE INDEPENDENT SCHOOL DISTRICT
**Defendant — Appellee**

**On Appeal from the United States District Court**
**Southern District of Texas, Houston Division**
Civil Action No. 4:23-cv-00358
Honorable Alfred H. Bennett, District Court Judge, Presiding

### BRIEF FOR DEFENDANT-APPELLEE
### ALDINE INDEPENDENT SCHOOL DISTRICT

SPALDING NICHOLS LAMP LANGLOIS
C. Cory Rush
State Bar No. 24074989
Federal I.D. 1125441
Email: crush@snll-law.com
3700 Buffalo Speedway, Suite 500
Houston, Texas 77098
Telephone:  (713) 993-7066
Facsimile:   (888) 726-8374

*Attorneys for Defendant-Appellee Aldine Independent School District*

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. Alisha Strife, Plaintiff-Appellant

2. Scott Newar
   Counsel for Plaintiff-Appellant

3. Dennis Herlong
   Counsel for Plaintiff-Appellant

4. Aldine Independent School District, Defendant-Appellee

5. Mr. Charles Cory Rush
   SPALDING NICHOLS LAMP LANGLOIS
   Counsel for Defendant-Appellee

/s/ C. Cory Rush_____
C. Cory Rush
Attorney of Record for Defendant-Appellee
Aldine Independent School District

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Defendant-Appellee Aldine Independent School District (AISD or the District) does not believe the issues raised in Appellant Alisha Strife's brief or the briefs of the *amici* merit oral argument. Oral argument would not significantly add to what the parties have presented in their respective briefs, and the trial court's final judgment should be affirmed without further expenditure of this Court's and the parties' resources. Nevertheless, as Strife has requested oral argument, in the event that the Court sets this case for oral argument, AISD requests the right to present oral argument.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS……………………………..  ii

STATEMENT REGARDING ORAL ARGUMENT…………………......  iii

TABLE OF CONTENTS…………………………...…………………......  iv

TABLE OF AUTHORITIES……………………………………………  vii

STATEMENT OF THE ISSUES…………………………………….......  1

STATEMENT OF THE CASE…………………………………………  3

SUMMARY OF THE ARGUMENT…………………………………..  9

STANDARDS OF REVIEW…………………………………………...  11

    *A. Motion to Dismiss—Rule 12(b)(6)*…………………………....  11

    *B. Motion for Summary Judgment—Rule 56*…………………....  12

ARGUMENT AND AUTHORITES……………………………………..  13

    *A. The district court properly dismissed Strife's failure-to-accommodate and hostile work environment claims under Rule 12(b)(6).*...............................................................................  13

        *1. Strife failed to plead a viable failure-to-accommodate claim based on the "delay" between her request and the District's ultimate approval of her requested accommodation*....................................  13

        *2. Strife failed to plead a plausible hostile work environment claims*…………………………………………………………  18

    *B. Alternatively, summary judgment on Strife's failure-to-accommodate and hostile work environment claims was appropriate.*...........................................................................  20

1. *AISD granted Strife's requested accommodation as soon as it received the information it requested for months*..................... 20

2. *Strife suffered no harassment*.......................................... 26

**C. AISD was entitled to summary judgment regarding Strife's disability discrimination and retaliation claims.**.................................... 29

1. *Strife did not establish a prima facie case of discrimination or retaliation*...................................................................... 29

    a. Strife did not suffer an adverse employment action even under the broader standard now applicable to discrimination claims.. 30

        i. The "delayed" accommodation..................................... 31

        ii. The abandoned independent medical examination.......... 35

    b. Strife also failed to establish a *prima facie* case of retaliation.... 37

        i. The length of the interactive process fails to demonstrate material adversity................................................. 38

        ii. Strife's *prima facie* retaliation claim fails based on the abandoned medical examination request as well............. 39

2. *Strife fails to establish a genuine issue of material fact regarding pretext for discrimination or retaliation*........................................ 40

    a. AISD produced its legitimate nondiscriminatory and nonretaliatory reasons.................................................. 42

    b. Evidence regarding pretext is absent from this record............... 44

**D. Strife's interference claim was, and remains, wholly unsupported**.... 47

CONCLUSION AND PRAYER.................................................... 50

CERTIFICATE OF SERVICE.................................................... 50

v

CERTIFICATE OF COMPLIANCE…………………………………………...  51

# TABLE OF AUTHORITIES

*Bass v. Stryker Corp.*,
    669 F.3d 501 (5th Cir. 2013) .................................................................11, 12

*Beck v. Univ. of Wisc. Bd. of Regents*,
    75 F.3d 1130 (7th Cir. 1996) .....................................................................14

*Bridges v. Dep't of Soc. Servs.*,
    254 F.3d 71 (5th Cir. 2001) .......................................................................31

*Brown v. City of Tucson*,
    336 F.3d 1181 (9th Cir. 2003) ...................................................................48

*Budhathoki v. Nielsen*,
    898 F.3d 504 (5th Cir. 2018) .....................................................................11

*Burlington N. & Santa Fe Ry. Co. v. White*,
    548 U.S. 53 (2006)...............................................................................36, 39

*Calero-Cerezo v. U.S. Dep't of Jus.*,
    355 F.3d 6 (1st Cir. 2004) ....................................................................25, 26

*Cannon v. Jacobs Field Servs. N. Am., Inc.*,
    813 F.3d 586 (5th Cir. 2016) .....................................................................29

*Clark v. Champion Nat'l Sec., Inc.*,
    952 F.3d 570 (5th Cir. 2020) ....................................................21, 28, 29, 30

*Credeur v. La. Through Off. Of Att'y Gen.*,
    860 F.3d 785 (5th Cir. 2017) .....................................................................28

*Davis v. Fort Bend Cnty.*,
    765 F.3d 480 (5th Cir. 2014) ...............................................................36, 39

*Delaval v. PTech Drilling Tubulars, L.L.C.*,
    824 F.3d 476 (5th Cir. 2016) ...............................................................26, 35

*Dickerson v. U.S. Dep't of Veterans Affs.*,
    2023 WL 5837503 (S.D. Tex. 2023) .........................................................30

vii

*Dillard v. City of Austin*,
    837 F.3d 557 (5th Cir. 2016) ..................................................20, 31

*E.E.O.C. v. Agro Distrib., LLC*,
    555 F.3d 462 (5th Cir. 2009) .........................................................43

*EEOC v. LHC Grp., Inc.*,
    773 F.3d 688 (5th Cir. 2014) ........................................20, 31, 41

*Feist v. La. Dep't of Just. Off. of the Att'y Gen.*,
    730 F.3d 450 (5th Cir. 2013) ......................................... 13, 14, 17, 21, 32, 41

*Flock v. Scripto-Tokai Corp.*,
    319 F.3d 231 (5th Cir. 2003) .........................................................12

*Flowers v. S. Reg'l Physician Servs., Inc.*,
    247 F.3d 229 (5th Cir. 2001) ...................................................18, 27

*Frakes v. Peoria Sch. Dist.*,
    872 F.3d 545 (7th Cir. 2017) .........................................................49

*Gipson v. Tawas Police Auth.*,
    794 F. App'x 503 (6th Cir. 2019) .............................................36, 40

*Gowesky v. Singing River Hosp. Sys.*,
    321 F.3d 503 (5th Cir. 2003) ...................................................19, 29

*Griffin v. UPS, Inc.*,
    661 F.3d 216 (5th Cir. 2011) ...................................17, 20, 27, 37

*Groome Res. Ltd. v. Parish of Jefferson*,
    234 F.3d 192 (5th Cir. 2000) ...................................................24, 25

*Hamilton v. Dallas Cnty.*,
    79 F.4th 494 (5th Cir. 1971) .............................................30, 31, 32

*Hannah P. v. Coats*,
    916 F.3d 327 (4th Cir. 2019) .........................................................39

*Harris v. Amazon.com, Inc.*,
   2024 WL 688255 (5th Cir. 2024) ...................................................34

*Harrison v. Brookhaven Sch. Dist.*,
   82 F. 4th 427 (5th Cir. 2023) ...............................................30, 34

*Harville v. City of Houston, Miss.*,
   945 F.3d 870 (5th Cir. 2019) .......................................................44

*Haskett v. Cont'l Land Res., L.L.C.*,
   668 F. App'x 133 (5th Cir. 2016)..................................................13

*Hoskins v. GE Aviation*,
   803 F. App'x 740 (5th Cir. 2020) ...............................................45

*Howard v. HMK Holdings, LLC*,
   98 F.3d 1185 (9th Cir. 2021) .......................................................24

*Kelly v. Town of Abingdon, Va.*,
   90 F.4th 158 (4th Cir. 1971) ........................................................49

*Kemp v. Holder*,
   610 F.3d 231 (5th Cir. 2010) .......................................................13

*Kennedy v. Superior Printing Co.*,
   215 F.3d 650 (5th Cir. 2000) ................................................22, 23

*King v. DFW Int'l Airport Bd.*,
   2024 WL 4132676 (5th Cir. 2024) ............................... 31, 38, 40, 41, 43, 47

*King v. Ill. Cent. R.R.*,
   337 F.3d 550 (5th Cir. 2003) .......................................................12

*Krocka v. Riegler*,
   958 F. Supp. 1333 (N.D. Ill. 1997) .............................................16

*Kroll v. White Lake Ambulance Auth.*,
   763 F.3d 619 (6th Cir. 2014) .......................................................35

*Lifecare Hosps., Inc. v. Health Plus of La., Inc.*,
   418 F.3d 436 (5th Cir. 2005) ...................................................................12, 20

*Loulseged v. Azko Nobel Inc.*,
   178 F.3d 731 (5th Cir. 1999) ................ 14, 15, 17, 18, 20, 22, 23, 24, 26, 27

*Lyons v. Katy Indep. Sch. Dist.*,
   964 F.3d 298 (5th Cir. 2020) .........................................................40, 41, 42

*Mayberry v. Vought Aircraft, Co.*,
   55 F.3d 11086 (5th Cir. 1995) ..............................................................44, 45

*McConathy v. Dr. Pepper/Seven Up Corp.*,
   131 F.3d 558 (5th Cir. 1998) ....................................................................27

*McCray v. Wilkie*,
   966 F.3d 616 (7th Cir. 2020) ....................................................................16

*Medina v. Ramsey Steel Co.*,
   238 F.3d 674 (5th Cir. 2001) ....................................................................42

*Mich. Prot. & Advocacy Serv. v. Babin*,
   18 F.3d 337 (6th Cir. 1994) .....................................................................49

*Molden v. E. Baton Rouge Par. Sch. Bd.*,
   715 F. App'x 310 (5th Cir. 2017) .....................................................21, 26, 27

*Montgomery-Smith v. George*,
   810 F. App'x 252 (5th Cir. 2020) ...............................................................18

*Muldrow v. City of St. Louis, Mo.*,
   601 U.S. 346 (2024) ...............................................................................34

*Nall v. BNSF Railway Co.*,
   917 F.3d 335 (5th Cir. 2019) ....................................................................41

*Patton v. Jacobs Eng'g Grp., Inc.*,
   874 F.3d 497 (5th Cir. 2017) ....................................................................27

*Ragas v. Tenn. Gas Pipeline Co.*,
  136 F.3d 455 (5th Cir. 1998) .........................................................47

*Raj v. La. State Univ.*,
  714 F.3d 322 (5th Cir. 2013) .....................................................11, 18

*Reeves v. Sanderson Plumbing Prods., Inc.*,
  530 U.S. 133 (2000) ...........................................................42, 44, 47

*Rogers v. EEOC*,
  454 F.2d 234 (5th Cir. 1971) .........................................................18

*Rollins v. Home Depot USA*,
  8 F.4th 393 (5th Cir. 2021) ............................................................48

*Sambrano v. United Airlines, Inc.*,
  707 F. Supp. 3d 552 (N.D. Tex. 2023) .............................34, 35, 36

*Schilling v. La. Dep't of Transp. & Dev.*,
  662 F. App'x 243 (5th Cir. 2016) .........................13, 15, 18, 20, 25

*Silva v. City of Hidalgo.*,
  575 F. App'x 419 (5th Cir. 2014) .............................................17, 20

*Stringer v. N. Bolivar Consol. Sch. Dist.*,
  727 F. App'x 708 (5th Cir. 2018) ..................................................34

*Sullivan v. River Valley Sch. Dist.*,
  197 F.3d 804 (6th Cir. 1999) .........................................................35

*Taylor v. Phoenixville Sch. Dist.*,
  174 F.3d 142 (3rd Cir. 1999) .........................................................14

*Thompson v. Microsoft Corp.*,
  2 F.4th 460 (5th Cir. 2021) ............................................................36

*Valle-Arce v. Puerto Rico Ports Auth.*,
  651 F.3d 190 (1st Cir. 2011) .........................................................16

*Watson v. FedEx Express*,
      2024 WL 340817 (5th Cir. 2024) ........................................................19, 22

*Williamson v. Am. Nat. Ins. Co.*,
      695 F. Supp. 2d 431  (S.D. Tex. 2010)........................................................13

## FEDERAL STATUTES

42 U.S.C. § 12003(b) ................................................................................48

42 U.S.C. § 12112(d)(4)(A) ..............................................................35, 39

## OTHER AUTHORITIES

29 C.F.R. § 1630.9 ................................................................................43

## **STATEMENT OF THE ISSUES**

1.     Whether dismissal of Strife's failure-to-accommodate claim under Rule 12(b)(6) was appropriate because AISD granted the only accommodation she requested and she failed to plead that any delay in the interactive process led to a failure to accommodate or rendered her requested accommodation unreasonable.

2.     Whether dismissal of Strife's hostile work environment claims under Rule 12(b)(6) was appropriate because Strife failed to plead any unlawful harassment that affected a term, condition, or privilege of her employment?

3.     Alternatively, whether summary judgment was appropriate on Strife's failure-to-accommodate and hostile work environment claims.

4.     Whether summary judgment was proper on Strife's disability discrimination claim because she failed to establish that she suffered an adverse employment action and, alternatively, because she failed to provide any evidence that AISD's proffered explanations for the allegedly delayed interactive process and abandoned directive to attend an independent medical examination were false and pretext for disability discrimination.

5.     Whether summary judgment was proper on Strife's retaliation claim because, like her discrimination claim, Strife failed to establish that she suffered an adverse employment action and failed to point to any record evidence that but-for her protected activities, the interactive process would have concluded earlier and she

would not have been directed to attend a subsequently abandoned medical examination.

      6.    Whether Strife forfeited her interference claim by devoting a single footnote to it before the district court and, alternatively, whether the district court correctly disposed of this claim on summary judgment in any event.

## **STATEMENT OF THE CASE**

In 2004, Strife suffered long-term physical and psychological injuries while serving in the United States Army in Iraq. ROA.1111-12. Since 2004, Strife has undergone multiple surgeries and treatments to address her service-related injuries and diagnoses, which include a traumatic brain injury (TBI), Post-Traumatic Stress Disorder (PTSD), a leg injury impacting her stability, and a shoulder injury. ROA.1112, 1117-18.

In the fall of 2012, AISD hired Strife as a teacher. ROA.1113. After working as a teacher for two years, Strife then worked as a Testing Coordinator within the District until the beginning of the 2022-2023 school year. ROA.1113. At the beginning of the 2022-2023 school year, Strife was offered the position of Performance Management Project Analyst within AISD's Human Resources Department at AISD's central administration building. ROA.1113.

In 2017, the United States Department of Veteran Affairs determined Strife to be 100% disabled from her PTSD and depressive disorder; 10% disabled from a degenerative joint disease in her right knee; 10% disabled from a left chronic ankle sprain; and 20% disabled from recurrent subluxation in her right knee. ROA.1160. Strife never requested any workplace accommodations for her disabilities prior to the 2022-2023 school year. ROA.1114.

In June 2022, Strife received a service dog from the Rescue for PTSD organization to assist her with her psychological and physical disabilities. ROA.1114, 1118, 1158.

On August 30, 2022, Strife began the process of requesting a reasonable accommodation through Broadspire Services, Inc. (Broadspire), a third-party vendor hired by AISD to process employee accommodation requests. ROA.516, 1218-19. Specifically, Strife requested permission to bring her service dog to work to use as an accommodation for her disabilities. ROA.1114.

On September 16, 2022, AISD's Employee Accommodation Committee (EAC), which was responsible for evaluating AISD employees' accommodation requests, met to discuss Strife's accommodation request. ROA.970-971, 983-985. After considering Strife's request, the EAC determined that additional information was needed from Strife to properly evaluate how the service dog would be utilized, determine what essential job functions were impacted by Strife's disabilities, and whether there were any alternative accommodations that could be utilized. ROA.983-84.

On September 20, 2022, Broadspire contacted Strife and informed her that her healthcare provider needed to fill out a Job Accommodation Questionnaire (JAQ) and submit it by October 5, 2022, in order for her accommodation request to be processed. ROA.478, 1115.

On September 26, 2022, Strife submitted a letter from Dr. Lisa Miller, a Doctor of Pharmacology, which stated Strife needed a service dog to accompany her to work because she suffered from PTSD and multiple physical ailments that affected her balance. ROA.898, 900, 1116.

On September 27, 2022, AISD informed Strife that the information in the letter needed to be corroborated by a medical doctor who is licensed to diagnose the conditions that were outlined in Dr. Miller's letter. ROA.899, 1116. Thereafter, on September 29, 2022, Strife submitted a letter from Dr. Gurtej S. Mann, M.D., a VA psychiatrist, which was substantively identical to Dr. Miller's September 22, 2022, letter. ROA.902, 1116-17.

On November 1, 2022, Strife submitted the JAQ. ROA.909-11, 1122. In the JAQ, Dr. Mann provided that Strife had physical and psychological impairments and recommended a service animal as an accommodation to address Strife's limitations. ROA.909-11. The JAQ did not address alternative accommodations. ROA.909-11. After reviewing the JAQ, AISD still felt that it did not have sufficient information as to whether there were any alternative accommodations, besides a service animal, that would sufficiently accommodate Strife. ROA.953-56.

On November 11, 2022, AISD informed Strife that she would need to attend an independent medical examination that would be performed by a medical provider retained by AISD, so that the EAC could get missing information pertaining to her

accommodation needs and possible alternative accommodations. ROA.916-19, 1124-26. Later that afternoon, AISD received a letter from Jennifer O'Connell (of the Rescue for PTSD organization), which espoused legal conclusions regarding the interactive process with Strife and the District's request that Strife undergo an independent medical examination. ROA.921-24, 1126. O'Connell's letter did not address the information the EAC deemed incomplete regarding Strife, including whether there were any alternative accommodations. ROA.921-24, 1126.

On November 16, 2022, AISD sent a letter to Strife to inform her that "the next step" in the interactive process would involve a physician retained by the District who would be performing a medical examination and reviewing the information that Dr. Mann provided. ROA.462, 1126. AISD Board Policy DBB (Local) was attached. ROA.926; ROA.1127. Shortly thereafter, Strife's new legal counsel sent a demand letter to AISD administrators demanding that AISD's request for Strife to undergo a medical examination be withdrawn and that Strife's request to bring her service dog to work be approved. ROA.446-51.

Between December 5, 2022, and December 22, 2022, Strife's counsel and AISD traded letters explaining their positions, including medical documents that still did not provide AISD with the information the EAC deemed missing. ROA.466-71, 482-83, 493, 516-19.

On December 23, 2022, AISD sent a letter to Strife, which scheduled the medical examination on January 10, 2023, and disclosed the physician. ROA.498, 1126. Strife, however, did not attend the scheduled appointment, and failed to inform AISD that she would not do so. ROA.1126-27.

On January 6, 2023, Strife filed an EEOC Charge against AISD, claiming disability-based discrimination and retaliation. ROA.413, 1654-55. Then on January 11, 2023, Strife's counsel sent AISD another letter containing medical information. ROA.538-41. Additionally, Strife's counsel also sent a letter from Dr. Darlene Makulski, Physical Therapist at the VA, in which she opined that she and Strife's physical therapist believed that a certified service mobility dog was appropriate for Strife to utilize to avoid balance-related injuries. ROA.538-39, 543. Dr. Makulski directed AISD to review medical notes from Dr. Sheryl Vandeven, Doctor of Physical Therapy. ROA.543. Dr. Vandeven's notes, however, were not attached to Dr. Makulski's letter, which AISD informed Strife's counsel of on January 13, 2023. ROA.1607-08. Strife's counsel sent AISD Dr. Vandeven's physical therapy consult notes later that afternoon. ROA.545. The notes analyzed Strife's physical limitations and the tasks Inde would perform to address Strife's mobility related impairments. ROA.547-54. Dr. Vandeven's consult notes did not address whether there were any alternative accommodations. ROA.543-47.

Strife filed the instant lawsuit and sought injunctive relief on February 1, 2023. ROA.14-43, 48-94, 1042. The district court held a TRO hearing on February 15, 2023. ROA.1862-1901. The district court denied the TRO. ROA.1889. During the hearing, the district court admonished the parties with the expectation that the interactive process be completed through a decision regarding Strife's accommodation prior to the preliminary injunction hearing. ROA.1894-96.

In response to counsel for AISD's post-TRO-hearing communication, Strife's counsel wrote on February 21, 2023, that it was "self-evident that a walker, cane, and/or wheelchair would not be an effective accommodation." ROA.1446, 1450-66. This was the first time AISD received an answer concerning potential alternative accommodations for Strife. ROA.1131. With all information finally available, the EAC approved Strife's request to bring her service dog to work on February 24, 2023. ROA.939-42, 1024-26, 1129. Strife and her service dog have worked together at AISD since the accommodation was approved. ROA.1130.

## SUMMARY OF THE ARGUMENT

AISD granted Strife the precise accommodation she requested, to bring her service dog to work, on February 24, 2023. AISD rendered this decision only three days after Strife finally answered the District's longstanding questions, from September 16, 2022, as to how the service dog would address her physical limitations and whether any alternative accommodations would suffice.

The district court correctly dismissed Strife's failure-to-accommodate and hostile work environment claims under Rule 12(b)(6). In so doing, the district court sifted through a *prolix*, circuitous, and redundant live complaint and found it lacking as to plausible allegations that the ostensible delay led to a failure to accommodate or otherwise rendered her granted accommodation unreasonable. The district court also concluded that Strife's complaint lacked well-pleaded allegations demonstrating unlawful harassment that affected any term, condition, or privilege of her employment. Despite the impressive word count of Strife's live pleading, the district court was correct in its determination.

But even if the district court erred in dismissing these claims under Rule 12(b)(6), AISD moved for summary judgment on these claims, and the record fully supports summary judgment in the District's favor. There is simply no evidence in the summary judgment record that AISD acted in bad faith in the interactive process or that any alleged delay in the process led to a failure to accommodate. There is

likewise no evidence in the summary judgment record to support the notion that anyone at AISD harassed Strife based on her disabilities or on any other basis. So, even though the district court did not reach the issue of whether summary judgment was warranted, this Court should affirm the dismissal of these claims on summary judgment based on the arguments and record developed before the district court.

As to Strife's remaining claims of discrimination, retaliation, and interference, the district court's summary judgment disposition should be affirmed, both on the grounds the district court articulated and others supported by the record. Strife simply suffered no adverse employment action, even in consideration of this Court's recent cases broadening the scope of such actions for discrimination claims.

Even assuming the actions about which Strife complains sufficiently demonstrate adversity, AISD proffered its legitimate, nondiscriminatory, and non-retaliatory reasons. The interactive process was lengthened because Strife refused to provide the District with information regarding how her service dog would aid her physical limitations and whether alternative accommodations existed. Because of her refusal, the District directed her to attend an independent medical examination so that AISD could obtain the information it needed to close that process. Once the District finally received all requested information by February 21, 2023, the District approved the accommodation. With this backdrop, the district court found Strife failed to come forward with any evidence in the record demonstrating that AISD's

stated reasons were pretext for retaliation. The same reasoning equally applies to Strife's discrimination claim, and this Court should affirm summary judgment on Strife's discrimination and retaliation claims.

Finally, Strife also purports to bring a claim for interference, which is a distinct claim from retaliation. AISD moved for summary judgment on this claim, but Strife devoted only a single footnote to defending against summary judgment. The district court granted summary judgment because Strife failed to point to any evidence in the record demonstrating that any AISD employee interfered with her rights under any statute. Assuming that Strife did not forfeit this claim before the district court, affirmance of summary judgment on Strife's interference claim is more than merited.

## STANDARDS OF REVIEW

### A.    *Motion to Dismiss—Rule 12(b)(6)*

A district court's grant of a motion to dismiss is reviewed *de novo. Budhathoki v. Nielsen*, 898 F.3d 504, 507 (5th Cir. 2018). The Court accepts all well-leaded facts in the complaint as true and viewed in the light most favorable to the plaintiff. *Raj v. La. State Univ.*, 714 F.3d 322, 329-30 (5th Cir. 2013) (citing *Bass v. Stryker Corp.*, 669 F.3d 501, 506 (5th Cir. 2012)). "We affirm the district court's grant of a motion to dismiss 'when the plaintiff has not alleged enough facts to state a claim to relief that is plausible on its face or has failed to raise its right to relief above the

speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Id.* at 330 (quoting *Bass*, 669 F.3d at 506).

## B.    *Motion for Summary Judgment—Rule 56*

This Court reviews a district court's grant of summary judgment *de novo*, applying the same standard as the district court. *King v. Ill. Cent. R.R.*, 337 F.3d 550, 553 (5th Cir. 2003). Summary judgment should not be granted unless by "viewing the evidence in the light most favorable to the nonmoving party, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law." *Flock v. Scripto-Tokai Corp.*, 319 F.3d 231, 236 (5th Cir. 2003). This Court considers all evidence in the record to ascertain whether there is a dispute of material fact but does not determine credibility or weigh evidence; rather, this Court draws "all reasonable inferences in favor of the nonmoving party." *Id*. Importantly, this Court "may affirm the district court's ruling on any grounds supported by the record" and which are consistent with these standards. *Lifecare Hosps., Inc. v. Health Plus of La., Inc.*, 418 F.3d 436, 439 (5th Cir. 2005).

# ARGUMENT AND AUTHORITIES

**A.**   ***The district court properly dismissed Strife's failure-to-accommodate and hostile work environment claims under Rule 12(b)(6).***

    *1.  Strife failed to plead a viable failure-to-accommodate claim based on the "delay" between her request and the District's ultimate approval of her requested accommodation.*

The district court correctly dismissed Strife's failure-to-accommodate claim[1] based on her failure to plead the claim to the level of plausibility under Rule 12(b)(6). ROA.1826-27. This Court requires a plaintiff to ultimately prove the following *prima facie* elements to prevail on a failure-to-accommodate claim: (1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations. *Feist v. La. Dep't of Just., Off. of the Att'y Gen.*, 730 F.3d 450, 452 (5th Cir. 2013). Although a plaintiff is not required to allege a *prima facie* case at the Rule 12(b)(6) stage, "Allegations related to that *prima facie* inquiry may nonetheless be helpful in satisfying the general *Iqbal* plausibility standard." *Haskett v. Cont'l Land Res., L.L.C.*, 668 F. App'x 133, 134 (5th Cir. 2016) (unpublished).

---

[1] Strife brought her discrimination claims under the Americans with Disabilities Act (ADA), the Rehabilitation Act of 1973 (RA), and Texas Labor Code Chapter 21 (Chapter 21). Courts analyze claims under these three statutes coextensively. *See Kemp v. Holder*, 610 F.3d 231, 235 (5th Cir. 2010); *Williamson v. Am. Nat. Ins. Co.*, 695 F. Supp. 2d 431,452 (S.D. Tex. 2010).

The first two *prima facie* elements have not been in dispute in this litigation. Moreover, is undisputed that AISD granted Strife the exact accommodation she requested; however, the district court properly applied Fifth Circuit cases analyzing situations, albeit n *dicta*, where an alleged delay in the interactive process for determining effective accommodations could potentially support a failure-to-accommodate claim. ROA.1826 (quoting *Schilling v. La. Dep't of Transp. & Dev.* 662 F. App'x 243, 247 (5th Cir. 2016) (unpublished)). Guided by this Court's decisions, the district court concluded that Strife failed to plausibly plead that AISD "failed to make reasonable accommodations" for Strife's disability-related limitations because she "has not alleged any facts that permit the Court to infer that AISD's six-month delay in granting her accommodation made that accommodation unreasonable." ROA.1826 (quoting *Feist*, 730 F.3d at 452).

The district court's reasoning and conclusion regarding Strife's failure to plausibly plead a failure-to-accommodate are correct and merit affirmance in this Court. Regarding whether an alleged delay in granting a requested accommodation could lead to liability, this Court first explored circumstances in which a delayed interactive process could amount to a failure to accommodate in *Loulseged v. Azko Nobel Incorporated*, 178 F.3d 731 (5th Cir. 1999). For example, "An employer that dragged its feet [while the employee continues working in a capacity arguably needing accommodation while the interactive process is ongoing] could force the

employee to work under suboptimal conditions, 'simply to document the employee's failures,' and use the employee's difficulties as an excuse to terminate her." *Loulseged*, 178 F.3d at 737 n.6 (quoting *Beck v. Univ. of Wisc. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996); citing *Taylor v. Phoenixville Sch. Dist.*, 174 F.3d 142, 165 (3rd Cir. 1999)) (alteration added). This Court provided other examples where a delayed interactive process could lead to a failure to accommodate:

> There may be other situations in which there is a pressing need to rapidly address the accommodation issue comprehensively. For example, if the employer knows the employee has been offered another job, delaying the interactive process might indicate the employer was attempting to force the employee to take the other position in order to avoid making a reasonable accommodation.

*Id.* Ultimately, *Loulseged* cautioned, "Nothing in the regulations or the cases indicates to us that an employer must move with maximum speed to complete this process and preempt any possible concerns," and concluded that "in an informal process the employer is entitled to move at whatever pace he chooses as long as the ultimate problem—the employee's performance of her duties—is not truly imminent." *Id.* at 737.

This Court later explored the issue of whether a delayed accommodation process could violate the ADA in *Schilling*. 662 F. App'x at 247. In *Schilling*, the Court "d[id] not decide whether delay alone may rise to the level of an ADA violation." *Id.* at 246. The Court, however, affirmed the district court's interactive process instruction to the jury and emphasized, in support of upholding the

instruction, that "undue delay is only an ADA violation to the extent it renders an accommodation (if any) unreasonable; the statute provides no separate claim for undue delay." *Id.* at 247.

Against this backdrop, the district court reasoned that Strife's failure-to-accommodate claim, premised entirely on the alleged delay in the interactive process, was implausible because the purported delay did not render her granted accommodation unreasonable. ROA.1826. In the live complaint, Strife concluded, with no supporting allegations, that the supposed delay forced her to work in "dangerous, suboptimal conditions," and subjected her to possible physical and psychological danger without her service dog. ROA.706. The district court reasoned, however, that Strife "had been working for AISD for approximately ten years before she requested an accommodation for her disability and was deemed 100% disabled by the VA five years before she requested an accommodation. ROA.686, 691, 695, 1826. Strife alleged no more than speculated harm that could have befallen her but did not, and the district court concluded that Strife "simply worked under the exact same conditions that she had previously until AISD ultimately granted the exact accommodation Plaintiff requested." ROA.1826.

The EEOC's *amicus* brief does not beget a different result, as it begins by merely reiterating the undisputed point that a delayed accommodation *may* lead to liability in some circumstances (EEOC Brief at pp. 10-11) and largely citing cases

analyzing such circumstances involving employers acting in bad faith in the interactive process, which there is no evidence of here. *See McCray v. Wilkie*, 966 F.3d 616, 621-22 (7th Cir. 2020); *Valle-Arce v. Puerto Rico Ports Auth.*, 651 F.3d 190, 201-02 (1st Cir. 2011); *Krocka v. Riegler*, 958 F. Supp. 1333, 1342 (N.D. Ill. 1997). Following this reiteration of the analytical framework the district court applied and promotion of a totality of the circumstances test that does not aide Strife anyway, the EEOC's brief assails the district court for not applying the "correct standard," even though the district court neither opined that an accommodation must facilitate an essential job function, as this Court rejected in *Feist*, nor did it require that Strife suffer a separate adverse employment action or a workplace injury. EEOC Brief at pp. 19-22.

The live pleading contained nothing to plausibly demonstrate that the alleged delay in the interactive process involved any of the circumstances that the Fifth Circuit and other courts acknowledge could amount to a failure to accommodate. *See Loulseged*, 178 F.3d at 737 n.6. At its core, Strife's "constructive denial" claim is nothing but a challenge to the interactive process standing alone, which the Fifth Circuit does not recognize as an independent claim unless the failure to engage in the interactive process leads to a failure to accommodate. *See Griffin v. UPS, Inc.*, 661 F.3d 216, 224 (5th Cir. 2011). Accordingly, because Strife did not plausibly allege that the purported delay in the interactive process led to a failure to

accommodate or that her requested accommodation was rendered unreasonable, the district court correctly dismissed Strife's failure-to-accommodate claim. *See Loulseged*, 178 F.3d at 737; *see also Schilling*, 662 F. App'x at 247; *see also Silva v. City of Hidalgo,* 575 F. App'x 419, 424 (5th Cir. 2014) (unpublished) (citing *Loulseged*, 178 F.3d at 736).

   *2. Strife failed to plead a plausible hostile work environment claims.*

   The district court correctly dismissed Strife's threadbare hostile work environment claims. ROA.1826-27.[2]   A hostile work environment claim "necessarily rests on an allegation that an employer has created 'a working environment heavily charged with . . . discrimination.'" *Raj*, 714 F.3d at 330-31 (quoting *Rogers v. EEOC,* 454 F.2d 234, 238 (5th Cir.1971)) (omission in original). In dismissing Strife's hostile work environment claims, the district court found that Strife's live pleading not only demonstrated that she continued working under the same conditions she had for the previous ten years, but also that she did "not provide any specific instances of harassment or include detail on the severity or pervasiveness of harassment by any employees," premised on working without her service dog for six months and being directed to undergo an independent medical

---

[2] The Fifth Circuit has not recognized a retaliatory hostile work environment cause of action, "though twelve circuits have." *See Montgomery-Smith v. George*, 810 F. App'x 252, 258 (5th Cir. 2020) (unpublished). As was the case in *Montgomery-Smith*, the Court need not decide whether to recognize this claim because, relying upon instructive cases in the discrimination context, Strife failed to plead that she was subject to "harassment severe and pervasive enough to rise to the level of a hostile work environment." *Montgomery-Smith*, 810 F. App'x at 258.

examination. ROA.1827 (citing *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 235-36 (5th Cir. 2001); *Watson v. FedEx Express*, 2024 WL 340817, at *3 (5th Cir. 2024) (unpublished)).

Strife demonstrates no error in the district court's dismissal of these claims. Distilled down, the allegations that Strife points the Court to in her live pleading are that: (1) there were back-and-forth communications between Strife, third parties representing her, and AISD regarding her accommodation request; (2) AISD required her to undergo an independent medical examination to which she never submitted; and (3) she did not have her service dog at work during this period. Strife Brief at pp. 40-41 (citing ROA.695-705). There is no allegation of any humiliating or derogatory comments, no contention that Strife was the subject of ridicule, or that she was physically or verbally threatened at any point. ROA.695-705. Moreover, the unrealized medical examination directive, standing alone, is not harassment. *Cf. Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 510 (5th Cir. 2003) ("Moreover, even if these conditions were 'unreasonable,' it is unclear that an 'unreasonable' return-to-work condition could raise a genuine material fact issue concerning 'harassment.'"). In short, because Strife did not plead that she suffered harassment, the district court was correct to dismiss Strife's hostile work environment claim. *See Watson*, 2024 WL 340817, at *3.

**B.    Alternatively, summary judgment on Strife's failure-to-accommodate and hostile work environment claims was appropriate.**

Although the district court dismissed Strife's failure-to-accommodate and hostile work environment claims under Rule 12(b)(6), AISD also moved for summary judgment on these claims. ROA.750-54. Strife responded to AISD's Motion for Summary Judgment on both claims. ROA.1087-93, 1106-07. As the summary judgment record supports judgment in AISD's favor on these claims, this Court may affirm the district court's final judgment on this record. *See Griffin*, 661 F.3d at 221 (quoting *Lifecare Hosps., Inc.*, 418 F.3d at 439).

*1.    AISD granted Strife's requested accommodation as soon as it received the information it requested for months.*

When an employee requests an accommodation for limitations resulting from her disability, "ADA compliance requires an employer to engage in an interactive process with an employee who requests an accommodation for her disability to ascertain what changes could allow her to continue working." *Dillard v. City of Austin*, 837 F.3d 557, 562 (5th Cir. 2016) (citing *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 700 (5th Cir. 2014)). Relevant here, this Court does not even recognize a claim based on an employer's wholesale failure to engage in the interactive process; rather, "When an employer's unwillingness to engage in a good faith interactive process *leads to* a failure to reasonably accommodate an employee, . . . the employer violates the ADA." *Silva*, 575 F. App'x at 424 (quoting *Loulseged*, 178 F.3d at 736)

(omission added and emphasis in original). In this light, this Court's exploration as to when a delay in the interactive process may violate the ADA centers on the impact and outcome of the purported delay on the employee requesting the accommodation. *See, e.g., Schilling*, 662 F. App'x at 247 ("Undue delay is only an ADA violation to the extent it renders an accommodation (if any) unreasonable; the statute provides no separate claim for undue delay.").

The Court's focus being on the impact of the alleged delay on the employee and what the result of the interactive process logically flows from the third required element of a viable failure-to-accommodate claim, which requires the employee to prove that the employer *failed to make reasonable accommodations* for known limitations resulting from the employee's disability. *See Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 587 (5th Cir. 2020) (quoting *Feist*, 730 F.3d at 452) (emphasis added). The fact that AISD granted the exact accommodation Strife requested is undisputed. ROA.844-45, 939-42, 1026, 1846. Thus, taken in isolation, the supposed "delay" in the interactive process in this case did not result in a failure to reasonably accommodate Strife, and summary judgment was more than merited on this claim. *See Molden v. E. Baton Rouge Par. Sch. Bd.*, 715 F. App'x 310, 316 (5th Cir. 2017) (unpublished) ("The record, however, is clear that the School Board did provide Molden with a reasonable accommodation. *Thus any putative failure to*

*engage in an interactive process cannot be said to have led to a failure to reasonably accommodate*.") (emphasis added).

Strife even admits in her brief that the first correspondence she received from AISD responsive to her accommodation request on September 16, 2022, indicated that the EAC required information about potential alternative accommodations to Strife's service dog request. Strife Brief at p. 8 (citing ROA.1417-18). AISD received *no* answers regarding alternative accommodations, such as a walker, cane, or wheelchair to address her mobility-related limitations, from Strife, her medical providers, or anyone else acting on her behalf until Strife's lawyer wrote that no such alternatives existed in a letter dated February 21, 2023. ROA.940, 1131, 1446. AISD approved Strife's requested accommodation three days later. ROA.939-42, 1024-26, 1129.

Moreover, this is not a case where there is an abject lack of bilateral communications between the parties during the interactive process or where harm befell the employee because the employer "dragged its feet" during the process, as this Court has opined could demonstrate a failure to accommodate resulting from a failed interactive process. *See Loulseged*, 178 F.3d at 736-37. Indeed, the sheer volume of communications from AISD to Strife and its efforts to obtain information necessary to complete the interactive process belie any notion of bad faith in the interactive process. *See Kennedy v. Superior Printing Co.*, 215 F.3d 650, 655 (6th

Cir. 2000). The Sixth Circuit's evaluation of the record in *Kennedy* is instructive to

the virtually identical circumstance posed in this case:

> The record clearly shows that Superior made numerous attempts to
> acquire medical documentation of Kennedy's condition and that
> Kennedy persistently refused to cooperate. During April and May of
> 1996, repeated requests were made of Kennedy to bring in further
> medical documentation demonstrating the need for accommodation.
> When those efforts failed, Superior sent Kennedy a letter indicating that
> it would arrange and pay for a medical exam. Superior scheduled two
> independent medical examinations, both of which Kennedy failed to
> attend. The record shows that Superior was extremely patient and did
> everything it could to assess the medical condition of Kennedy.
> Superior never indicated that it would deny Kennedy's request to work
> through lunch, it merely wished to assess Kennedy's medical condition.
> Under these facts, there is no ADA violation and Kennedy's claim must
> be dismissed.

*Id.*

Strife's brief fails to move the needle away from the inescapable conclusion

that AISD did not fail to reasonably accommodate her based solely on the putative

delay. First, Strife cites the same portions of *Lousleged* discussed *supra* for the

general and non-controversial proposition that an employer's purposeful delay of the

interactive process in the face of pressing need or in an effort to render the requested

accommodation unreasonable "might create liability." Strife Brief at 27 (quoting

*Loulseged*, 178 F.3d at 737 n.6). But, as the district court found, the summary

judgment record contains no evidence of a pressing need to grant Strife's requested

accommodation or that Strife suffered any consequences springing from the

ostensible delay. ROA.1833. Indeed, Strife's own testimony demonstrates that she

continued working successfully without an accommodation, just as she had done for the previous decade, she never received a negative evaluation or reprimand regarding her job performance, and she did not suffer a fall or any other injurious event until after she began bringing her service dog to work. ROA.781, 798-99, 814-15. Put simply, Strife's own deposition testimony removes this case from the ambit of what *Loulseged* cautioned might lead to an employer's liability.

Second, Strife cites to this Court's decision in *Groome Resources Limited v. Parish of Jefferson*, 234 F.3d 192, 199 (5th Cir. 2000), for the proposition that the denial of an accommodation may be "actual or constructive" and that an "indeterminate delay has the same effect as an outright denial." Strife Brief at pp. 36-37. *Groome*, a Fair Housing Act (FHA) case, involves a delay in approving an application for reasonable accommodation seeking an exception from a zoning ordinance to build a group home, and this Court found this to be a constructive denial of the plaintiff's accommodation request because the delay caused the postponement of closing on real property several times. *See Groome*, 234 F.3d at 199-200. *Groome* contains no analysis of whether there is an interactive process required of FHA claims akin to the requirement in employment accommodation claims. *But see Howard v. HMK Holdings, LLC*, 98 F.3d 1185, 1192-94 (9th Cir. 2021) (collecting cases and holding that "the FHAA does not refer to an interactive process or base liability on a landlord's failure to interact, so there is no such liability under the

FHAA. No other circuit has found that failing to engage in the interactive process provides an independent basis for liability under the FHAA."). In any event, *Groome* is easily harmonized with this Court's employment accommodation cases, where delay in the interactive process *may* lead to liability if it results in a failure to accommodate or renders an accommodation unreasonable. *See Schilling*, 662 F. App'x at 247 ("Indeed, undue delay is only an ADA violation to the extent it renders an accommodation (if any) unreasonable; the statute provides no separate claim for undue delay.").

Third, Strife relies on the First Circuit's opinion in *Calero-Cerezo v. United States Department of Justice*, 355 F.3d 6 (1st Cir. 2004), for the contention that an employer's delays and other actions during the interactive process may result in a violation of the ADA. Strife Brief at p. 27-28. There, the Court explained, one sentence before the one Strife quotes in her brief, that a factfinder could conclude that the defendants "failed to engage in any good faith interactive process to explore whether some variant of the plaintiff's proposal might have been workable." *Calero-Cerezo*, 355 F.3d at 24-25 (emphasis added). Resultingly, the First Circuit found that, "in the face of plaintiff's increasingly desperate requests for an accommodation, the defendants simply stonewalled - going so far as to deny, in the face of substantial medical evidence, that plaintiff suffered a disability at all." *Id*. at 25. Here, the record conclusively demonstrates significant communications from AISD "to explore

whether some variant of Plaintiff's proposal might have been workable." ROA.478, 498, 516-19, 916-19, 953-56, 983-984, 1115, 1124-26, 1607-08. Moreover, *Calero-Cerezo* certainly did not involve a situation where the plaintiff received the exact accommodation she requested. *But see Molden*, 715 F. App'x at 316.

Moreover, Strife is also inviting the Court to depart from several longstanding *axioms* in ADA cases. The first truism Strife wants this Court to ignore is that the ADA-mandated interactive process is meant to be "flexible" and "bilateral," requiring "shared," good faith participation by both the employer and the employee to determine the appropriate accommodation for the disabled employee. *See Loulseged*, 178 F.3d at 735-36 (collecting cases). Second, the employee is entitled to a *reasonable* accommodation, and the employer is free to choose among effective accommodations and to request sufficient information sufficient to validate the request. *See Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 482 (5th Cir. 2016). Third, a complaint about the interactive process, standing alone, is not a recognized claim under the ADA; rather, the failures in the interactive process must lead to a failure to accommodate to sustain such a claim. *Loulseged*, 178 F.3d at 736 ("[W]hen an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee, the employer violates the ADA.") (alteration added).

The Court should decline Strife's invitation to impose liability on an employer under the ADA for *failing* to provide a reasonable accommodation, when AISD *granted* her the exact accommodation she requested. ROA.939-42, 1024-26, 1129-30. Nothing in this record exists demonstrating any of situations this Court opined might impose liability under the ADA happened to Strife. *See Loulseged*, 178 F.3d at 737 n.6. In short, because AISD unquestionably granted and never denied (actually or constructively) Strife's requested accommodation, AISD was entitled to summary judgment on Strife's failure-to-accommodate claim. *See Molden*, 715 F. App'x at 316.

### 2. Strife suffered no harassment.

Strife's hostile work environment claims were properly ripe for dismissal on summary judgment even if the district court had not disposed of them under Rule 12(b)(6), and the Court should affirm the final judgment on those claims on this alternative basis. *See Griffin*, 661 F.3d at 221. Presupposing this Court were to recognize a retaliatory hostile work environment claim in addition to Strife's disability-based hostile work environment claim, Strife is required to establish: (1) that she belongs to a protected group; (2) that she was subjected to unwelcome harassment; (3) that the harassment complained of affected a term of employment; and (5) that the employer knew or should have known of the harassment and failed to take, prompt remedial action. *Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437,

445 (5th Cir. 2017) (quoting *Flowers*, 247 F.3d at 235-36). Additionally, the harassment must "'be sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment.'" *Flowers*, 247 F.3d at 236 (quoting *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 563 (5th Cir. 1998)).

Aside from the first *prima facie* element, this record is devoid of any evidence to support a viable hostile work environment claim. Strife testified that Smith neither made disparaging remarks about her having a disability, nor did she make any disparaging comments about her service dog. ROA.789, 829. In fact, Strife testified that Smith was "pleasant" and "cordial" with her, and always answered her questions whenever discussing her accommodation request. ROA.789, 829, 845. Moreover, when asked if any members of the EAC made disparaging or discriminatory comments about her disability, Strife testified that she was not aware of any of them making such comments. ROA.854-55. Strife has also never received a negative performance review or received a reprimand from her manager or the Human Resources team. ROA.781. Further, Strife's attempt to categorize the communications during the interactive process and the later abandoned request that she undergo an independent medical evaluation as "harassment" is unavailing. *See, e.g., Clark*, 952 F.3d at 585 (quoting *Credeur v. La. Through Off. of Att'y Gen.*, 860 F.3d 785, 796 (5th Cir. 2017)) ("a disagreement with an employer over terms of

employment or an accommodation do[es] not amount to harassment."); *see also, e.g.*, *Gowesky*, 321 F.3d at 510. This is especially notable based on the district court's findings that there was no evidence to support that Strife suffered any alterations to the terms and conditions of her employment during the interactive process. ROA.1831-33.

In the absence of any evidence showing Strife was the victim of unwelcome, disability-based or retaliatory harassment that was sufficiently pervasive or severe to alter the terms, conditions, or privileges of her employment, Strife's vague and conclusory hostile work environment claims were primed for dismissal on summary judgment, and AISD requests that this Court affirm the district court's decision on this alternative basis. *See Clark*, 952 F.3d at 586.

**C.   *AISD was entitled to summary judgment regarding Strife's disability discrimination and retaliation claims.***

*1.  Strife did not establish a prima facie case of discrimination or retaliation.*

The Court should affirm summary judgment on Strife's discrimination and retaliation claims because Strife did not suffer an adverse employment action sufficient to support a *prima facie* case on either claim. Proof of an adverse employment action is a *prima facie* element common to both discrimination and retaliation claims. *See Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590 (5th Cir. 2016) (the *prima facie* elements of a discrimination claim are: (1) she has a disability or was regarded as disabled; (2) she was qualified for the job; and

(3) she was subject to an adverse employment decision on account of her disability); *see Clark*, 952 F.3d at 588 (the *prima facie* elements of a retaliation claim are: (1) engagement in an activity protected by the ADA, (2) an adverse employment action, and (3) a causal connection between the protected act and the adverse action). As discussed below, neither of Strife's proposed adverse employment actions (the "protracted delay/constructive denial of her request to work with her service dog" and the abandoned directive to attend an independent medical examination) and the abandoned directive to attend an independent medical evaluation) amount to adversity in the employment context.

    a. <u>Strife did not suffer an adverse employment action even under the broader standard now applicable to discrimination claims.</u>

In evaluating and ultimately disposing of Strife's disability discrimination claim due to Strife's failure to demonstrate a genuine issue of material fact that she suffered an adverse employment action, the district court appropriately applied this Court's recent cases analyzing this element in the Title VII context and a sister court's application of these cases in the ADA context. ROA.1830 (citing *Harrison v. Brookhaven Sch. Dist.*, 82 F.4th 427, 431 (5th Cir. 2023); citing *Hamilton v. Dallas Cnty.*, 79 F.4th 494, 506 (5th Cir. 2023); citing *Dickerson v. U.S. Dep't of Veterans Affs.*, 2023 WL 5837503, at *7 (S.D. Tex. 2023)). Under this Court's recent decisions, Strife was first required to establish that the alleged adverse actions altered the terms, conditions, or privileges of her employment. *See Harrison*, 82

F.4th at 430 (*citing Hamilton*, 79 F.4th at 502-03). Second, Strife needed to demonstrate something more than "*de minimis*" harm. *See id.* at 431. This means "the complained-of-action must involve a meaningful difference in the terms of employment and injure the affected employee[.]" *Id.* (cleaned up).

i. The "delayed" accommodation.

First, concerning Strife's contention that the "protracted delay/constructive denial of her request to work with her service dog" constitutes an adverse employment action, AISD and the EEOC seemingly agree that a "failure-to-accommodate claim under the ADA is distinct from a claim of disparate treatment and is analyzed separately under the law." *Bridges v. Dep't of Soc. Servs.*, 254 F.3d 71, 71 n.1 (5th Cir. 2001) (unpublished); EEOC Brief at 21-22. On this point, as this Court recently explained following a discussion of the differences between the two claims, "[T]he question of whether an employer could reasonably accommodate an employee is pertinent to whether a plaintiff was qualified for a position," which is an element that has never been in dispute in this case. *King v. DFW Int'l Airport Bd.*, 2024 WL 4132676, at *4 (5th Cir. 2024) (unpublished) (citing *LHC Grp.*, 773 F.3d at 703 n.6). There is simply no authority for Strife's apparent proposition that disability-based disparate treatment and failure-to-accommodate claims are no longer distinct from one another. *See Dillard*, 837 F.3d at 562.

Setting aside Strife's conflation of distinct claims and her unsupported argument that the ADA provides broader protection than Title VII,[3] Strife points to no error in the district court's determination that there was no evidence the alleged delay caused anything more than *de minimis* harm. Specifically, the district court found it salient that there was no evidence that AISD ever denied Strife's accommodation; instead, the evidence showed that Strife's request "remained under review, with AISD and [Strife] engaging in back-and-forth discussions regarding the request until it was ultimately granted on February 24, 2023." ROA.1831 (alteration added); *see also* ROA.889-91, 902, 904-11, 915-19, 926-27, 929-37, 939-42.

Additionally, the district court found that "the delay in granting the accommodation did not at all alter the 'terms, conditions, or privileges' of Plaintiff's employment, as Strife continued working under the same exact conditions with the same psychological and physical ailments that she had for years prior." ROA.1831 (citing *Hamilton*, 79 F.4th at 506). The district court noted that Strife "maintained her same role and compensation, received high performance evaluations, and was never reprimanded." ROA.1831; *see also* ROA. 781, 798, 814-15.

The record shows that Strife's allegations that AISD's supposed delay in granting her accommodation "endangered and jeopardized" her physical and

---

[3] *See Feist*, 730 F.3d at 454 (citing both Title VII and ADA cases when discussing a claim of retaliation under the ADA).

psychological health and safety are just that—allegations. Strife continued working in the same manner as she had from the onset of her decade-long employment with AISD. ROA.798, 814. Strife had access to a walker if she needed it for stability and had used it when she worked in a campus-based location. ROA.795. Strife also had access to a wheelchair, although she had never used it at work. ROA.826.

The only contention Strife makes of her working conditions having "materially worsened," is her allegation, without citation, that "she had to climb a steep stair bank to enter her office—a climb that, because of her severe mobility impairments, was extremely perilous." Strife Brief at pp. 46-47. Strife admitted during her deposition that never tripped and fell on this staircase, and although she had "misstepped" elsewhere on AISD property, she had never been injured while doing so. ROA.814.[4] Strife also admitted that the "stair bank" was not significantly different from the staircase she previously used. ROA.810. Strife then admitted that "about 90% of the time," she used the available ramp to enter the building anyway. ROA.812.

The record in this case manifestly supports the district court's conclusion that "even assuming that AISD's delay in granting the accommodation could be considered an adverse employment action, there is no summary judgment evidence

---

[4] To be clear, Strife only fell while working at AISD *after* Inde began accompanying her at work. ROA.799.

before the Court showing that Plaintiff suffered anything beyond a *de minimis* injury." ROA.1831. Recent cases from the Supreme Court and this Court under the analogous Title VII statute, accordingly, fully support the district court's grant of summary judgment due to Strife's failure to demonstrate a genuine issue of material fact that she suffered an adverse employment action based on the purportedly delayed accommodation. *See Muldrow v. City of St. Louis, Mo.*, 601 U.S. 346, 354 (2024) (holding, in a transfer case, a plaintiff must show that the adverse employment action "brought about some 'disadvantageous' ***change*** in an employment term or condition.") (internal citation omitted and emphasis added); *Harris v. Amazon.com, Inc.*, 2024 WL 688255, at *2 (5th Cir. 2024) ("[A] plaintiff 'must allege not only an adverse action, but something more than a *de minimis* harm borne of that action.'") (quoting *Harrison*, 82 F.4th at 431) (citation omitted in original). Thus, Strife's speculation of possible injury, especially when considering her own stability/mobility devices she could have used in the *interim* if needed, plainly falls short of the standard for an actionable discrimination claim. *See, e.g., Sambrano v. United Airlines, Inc.*, 707 F. Supp. 3d 552, 665 (N.D. Tex. 2023); *see also Stringer v. N. Bolivar Consol. Sch. Dist.*, 727 F. App'x 708, 804-05 (5th Cir. 2018).

ii.  The abandoned independent medical examination.

Strife's attempt to claim that AISD's abandoned request that she attend an independent medical examination fares no better in establishing that she suffered an adverse employment action. The district court found that the terms, conditions, and privileges of Strife's employment were unaffected by AISD's unrealized request. ROA.1831-32 (quoting *Sambrano*, 707 F. Supp. 3d at 665).

The district court was correct on this front as well. From the outset, requesting an independent medical examination may be job-related and consistent with business necessity when made in response to an employee's request for accommodation. 42 U.S.C. § 12112(d)(4)(A) (allowing for medical inquiries when job-related and consistent with business necessity); *see also Hannah P. v. Coats*, 916 F.3d 327, 339 (4th Cir. 2019) ("An employer's request for a medical examination is job-related and consistent with business necessity when: '(1) the employee requests an accommodation . . . ") (quoting *Kroll v. White Lake Ambulance Auth.*, 763 F.3d 619, 623 (6th Cir. 2014)) (omission added); *accord Delaval*, 824 F.3d at 482. And, notable here, "[A]n examination ordered for valid reasons is neither an adverse job action nor does it prove discrimination." *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 813 (6th Cir. 1999) (alteration added).

It must also be noted that the only reason AISD resorted to the later abandoned medical examination directive is that Strife refused answer the District's repeated

requests for complete information and potential alternative accommodations. ROA.822-25, 828, 830, 953-56. The requested (but abandoned) medical examination was also authorized under AISD Board Policy DBB (Legal) and (Local). ROA.913, 953, 1566-69.

AISD was plainly entitled to resort to requesting that Strife submit to a medical examination after she refused to submit the information AISD required to complete the interactive process. *See Gipson v. Tawas Police Auth.*, 794 F. App'x 503, 508 n.6 (6th Cir. 2019). Moreover, the request never came to fruition because the District granted the accommodation immediately upon receipt of an answer to its longstanding question about potential alternatives. ROA.832-33, 1029-30, 1446.

The district court, therefore, correctly ruled that Strife failed to clear this Court's recently broadened adverse employment action threshold because there was simply no change in the terms, conditions, or privileges of Strife's employment at all—not even a *de minimis* change. *See Sambrano*, 707 F. Supp. 3d at 665; *cf. Thompson v. Microsoft Corp.*, 2 F.4th 460, 469 (5th Cir. 2021) (employer did not violate the ADA by collaborating with employee regarding accommodations for several months, explaining accommodations it deemed unreasonable, asking the employee to respond with alternative accommodations, and offering to consult directly with the employee's doctors).

b. <u>Strife also failed to establish a *prima facie* case of retaliation.</u>

To establish a *prima facie* case of retaliation, Strife was required to establish that "'a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Davis v. Fort Bend Cnty.*, 765 F.3d 480, 490 (5th Cir. 2014) (quoting *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006)) (citation and internal quotation marks omitted in original). Much like the recently instructed standard in discrimination claims, "'[t]he antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm.'" *Id.* (quoting *White*, 548 U.S. at 67). "Importantly, 'the significance any given act of retaliation will often depend upon the particular circumstances. Context matters.'" *Id.* (quoting *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 69).

The district court held that the record did not establish that the allegedly delayed accommodation process resulted in a materially adverse employment action. ROA.1833. Regarding the abandoned independent medical examination request, the district court assumed, without deciding, that even if this constituted an adverse employment action, Strife failed to demonstrate a genuine issue of material fact regarding any pretext for AISD's reasons for requesting the examination (discussed *infra*). ROA.1834. As discussed below, the district court made the correct

determination based on the summary judgment record regarding the length of the accommodation process, and this Court should also affirm summary judgment based on Strife's failure to establish material adversity based on the abandoned medical examination request as well. *See Griffin*, 661 F.3d at 221 ("[W]e may affirm the district court's ruling on any grounds supported by the record.") (alteration added).

i. The length of the interactive process fails to demonstrate material adversity.

Because all of Strife's claims, regardless of label, are merely recasts of each other, the district court properly disposed of her retaliation claim premised on the alleged delayed accommodation under the same analysis applied to her discrimination claim, assuming it would be appropriate to consider a failure-to-accommodate claim with a retaliation claim at the outset. *See King*, 2024 WL 4132676, at *4. Namely, AISD never denied Strife's requested accommodation; instead, AISD repeatedly sought "enough information to make a determination because no medical professionals had opined about whether alternative accommodations existed that could assist [Strife]." ROA.1833; *see also* ROA. 939-42, 1024-26, 1129, 1131. As before, the district court found that Strife had not shown how any ostensible delay in the accommodation process caused her to suffer any harm at all. ROA.781, 798, 814-15, 1833. Finally, the district court correctly noted that there was no evidentiary showing that a reasonable person in Strife's position

would be dissuaded from filing an EEOC charge due to a delayed accommodation and that Strife submitted a charge on January 6, 2023. ROA.1656, 1833.

In short, the district court correctly found that there was no genuine issue of material fact that the purportedly delayed accommodation process harmed Strife at all, let alone in a way sufficient to meet the material adversity standard attendant to retaliation claims, and summary judgment should be affirmed. *See Davis*, 765 F.3d at 490 ("Simply listing the employment actions Davis believes were adverse does not meet her burden on summary judgment because she makes no effort to evidence circumstances that make those actions 'materially adverse.' . . . Again, '[c]ontext matters.'") (quoting *White*, 548 U.S. at 68-69) (internal citation omitted and alteration in original).

ii. Strife's *prima facie* retaliation claim fails based on the abandoned medical examination request as well.

Although the district court stopped short of reaching the same holding it did on Strife's discrimination claim regarding the abandoned medical examination request, the evidence in this record plainly supports the same conclusion that Strife did not suffer an adverse employment action premised on this unrealized event. As explained *supra*, AISD requested that Strife attend the medical examination only after repeatedly failed to send adequate documentation that the District could use to thoroughly evaluate her request, and Strife provided no information regarding potential alternative accommodations. ROA.822-25, 828, 830, 953. AISD Board

Policy DBB (Legal) and (Local) explicitly allows for such medical examinations. ROA.1565-69. As does the ADA. 42 U.S.C. § 12112(d)(4)(A). And, just as was the case in Strife's discrimination claim, Strife pointed to no evidence in the record showing that the unrealized medical examination impacted the terms, conditions, or privileges of her employment and, specific to her retaliation claim, did not dissuade her from filing an EEOC charge. ROA.798, 814, 1656. Accordingly, this Court should affirm summary judgment on this alternative ground. *Gipson*, 794 F. App'x at 508 n.6 ("But even in a retaliation claim, we don't think that 'adverse employment action' is broad enough to include a valid medical exam requested for legitimate business reasons. Otherwise, every employee who is required to take a medical exam when he requests accommodations could make out a prima facie case of retaliation.") (internal citation omitted).

2. *Strife fails to establish a genuine issue of material fact regarding pretext for discrimination or retaliation.*

Assuming that Strife could establish a *prima facie* case of discrimination or retaliation, the burden would shift to AISD to proffer its legitimate nondiscriminatory and non-retaliatory reasons for taking the challenged actions. *See King*, 2024 WL 4132676, at *5 (quoting *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 304 (5th Cir. 2020)). "'If the employer meets its burden of production, the employee must then demonstrate that the proffered reason is a pretext for retaliation [or discrimination].'" *Id.* (quoting *Lyons*, 964 F.3d at 304)

(alteration in original). Strife's pretext burden in the discrimination context requires her to offer sufficient evidence to create a genuine issue of material fact that each of AISD's reasons are untrue but are, instead, a pretext for disability discrimination. *See LHC Grp.*, 773 F.3d at 702. Pretext in the retaliation context requires Strife to show "that the adverse action would not have occurred 'but for' the employer's retaliatory motive[.]" *Feist*, 730 F.3d at 454 (internal citations omitted). For either claim, Strife's bears the summary judgment burden to present evidence from which a reasonable jury could decide AISD's stated reasons were pretextual. *See King*, 2024 WL 4132676, at *6 (citing *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 342 (5th Cir. 2019)).

As noted above, the district court assumed, without deciding, that even if the abandoned medical examination directive constituted an adverse employment action in the retaliation context, Strife would still be required to come forward with evidence demonstrating that the District's non-retaliatory reasons were pretextual. ROA.1834 (citing *Lyons*, 964 F.3d 304). The district court held that Strife failed to demonstrate a genuine issue of material fact that AISD's proffered reasons were mere pretext for retaliation. ROA.1834-36. Although AISD moved for summary judgment on the pretext element of Strife's discrimination claim as well, the district court did not reach that issue based on its disposition of that claim at the *prima facie* stage. ROA.760-62. This Court should affirm summary judgment as to both the

discrimination and retaliation claims based both on the district court's decision and on the record evidence in this case.

    a. <u>AISD produced its legitimate nondiscriminatory and non-retaliatory reasons.</u>

Under the burden shifting framework for discrimination and retaliation claims, AISD was required to introduce evidence which, if true, would permit the trier-of-fact to conclude that the challenged adverse employment actions were nondiscriminatory or nonretaliatory. *See Lyons*, 964 F.3d at 306 (quoting *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 674 (5th Cir. 2001)). An employer's burden at this stage is one of production only, not persuasion. *See Reeves v. Sanderson Plumbing Prods.*, Inc., 530 U.S. 133, 142 (2000).

AISD discharged its burden of production. ROA.1834-35. In particular, the interactive process extended primarily due to Strife's delay in getting AISD the requisite documents they needed to make a final decision on her service animal. ROA.819-20, 849-50, 888-91, 898-900, 902, 904-07, 909-11, 921-24, 929-37, 953. The record evidence shows AISD did not receive the information it needed to evaluate Strife's physical limitations and how her service dog would be utilized to assist with her physical limitations until January 2023, nearly five months after Strife initiated the accommodation process. ROA.840-43, 929-37. Additionally, AISD did not receive information concerning viable alternative accommodations until February 17, 2023. ROA.848-50, 940.

Regarding AISD's abandoned medical examination request, AISD only made the request after not obtaining the requisite information from Strife and her medical providers over several months, especially regarding how the service animal would assist Strife's physical limitations and potential alternatives, and the District withdrew the request before granting her accommodation in any event. ROA.822-24, 831, 849-50, 939-42, 953-56, 1023-26.

The district court summarized the nature of the information AISD had when it resorted to directing Strife to attend an independent medical examination and concluded, "Though these documents outlined [Strife's] diagnoses and how a service dog assisted her, none contemplated whether alternative accommodations, such as use of a cane, walker, or wheelchair, would sufficiently assist [Strife] in coping with her disabilities." ROA.1834-35. Relying upon this Court's decision in *E.E.O.C. v. Agro Distribution, LLC*, which holds that an employee has a "right to a reasonable accommodation, not the employee's preferred accommodation," and that an "employer providing the accommodation has the ultimate discretion to choose among effective accommodations," the district court concluded that AISD met its burden of production. ROA. 1835 (quoting *Agro Distrib, LLC*, 555 F.3d at 471) (quoting 29 C.F.R. pt. 1630, App., § 1630.9)). AISD, therefore, met its burden of production regarding its legitimate, nondiscriminatory, and non-retaliatory reasons for taking the actions Strife purports to be adverse.

b. <u>Evidence regarding pretext is absent from this record.</u>

Since AISD met its burden of production, the burden returns to Strife to show that AISD's reasons are pretextual. *See King*, 2024 WL 4132676, at *5. Genuine issues of material fact regarding pretext may be established considering the strength of the employee's *prima facie* case coupled with sufficient evidence from which a reasonable factfinder could reject the employer's nondiscriminatory explanation for its decision. *See Harville v. City of Houston, Miss.*, 945 F.3d 870, 876 (5th Cir. 2019). The Supreme Court warns, however, that "if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination occurred." *Id.* (quoting *Reeves*, 530 U.S. at 148).

Strife points to no evidence establishing a genuine issue of material fact to establish pretext for either discrimination or retaliation. Despite admitting in the factual recitation portion of her brief that AISD notified her that it needed information concerning potential alternative accommodations on September 16, 2022, she fails to confront that in her argument and, instead, bemoans that her repeatedly insufficient submissions during the interactive process that did not respond to AISD's initial inquiry were sufficient to close the process. *Compare* Strife Brief at p. 8 and pp. 36-44. No doubt, Strife believes the interactive process

should have concluded faster and disagrees with the withdrawn decision to have her submit to a medical examination, but her mere disagreement is insufficient to demonstrate discriminatory or retaliatory intent. *See Mayberry v. Vought Aircraft, Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) ("The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive.").

Strife's pretext arguments further ignore the keystone of the interactive process, which is that it is meant to be a "flexible dialogue." *Hoskins v. GE Aviation*, 803 F. App'x 740, 745 (5th Cir. 2020) (internal quotations omitted). AISD required additional information to complete Strife's accommodation request, especially regarding potential alternative accommodations. ROA.822-24, 831, 849-50, 939-42, 953-56, 1023-26 Nothing in the summary judgment record demonstrates that the efforts AISD undertook to obtain that information from Strife was motivated by discriminatory or retaliatory *animus* in any manner whatsoever—especially when considering that AISD granted her accommodation request more than a year ago. ROA.939-42. Regardless, even if AISD was wrong in its belief that additional information was needed to conclude the process, such a mistaken belief is not evidence of pretext in the absence of evidence of a discriminatory or retaliatory motive. ROA.1835-36 (quoting *Mayberry*, 55 F.3d at 1091).

Finally, aside from Strife disagreeing with AISD's stance regarding the lack of responsive information during the interactive process, she argues that the timing of the granted accommodation evinces evidence of illicit motive because it occurred after the TRO hearing before the district court. Strife Brief at pp. 40-41. Omitted from this argument, however, is any indication about what happened during that hearing but, thankfully, this is in the summary judgment record. ROA.1491-30. The Honorable Judge Bennett, after stating he was denying the application for TRO on February 15, 2023, "intentionally" provided the parties additional time to conduct discovery and to confer on the, at that time, unconcluded interactive process. ROA. 1522-23. Unequivocally, Honorable Judge Bennett instructed AISD to be finished with the interactive process by the preliminary injunction hearing and likewise admonished Strife to facilitate the process by giving the District information it needed to conclude its evaluation. ROA.1522-27.

Following the district court's clear admonishment, AISD's counsel wrote to Strife's counsel two days later with narrowly drafted medical releases, as had been discussed during the TRO hearing. ROA.1450-66. On February 21, 2023, Strife's counsel responded regarding potential alternative accommodations:

> In any event, it is self-evident that a walker, cane, and/or wheelchair would not be an effective accommodation of Ms. Strife's physical impairments, as they would be of **no** benefit if/when she falls, becomes grounded, and possibly fractures her extremities (or worse)—which, as Drs. Vandeven and Mann note—she has done repeatedly both at AISD

and at home. Therefore, they need not be considered—much less accepted—by Ms. Strife . . . .

ROA.1446 (emphasis in original and omission added). This was the final information AISD needed to complete the interactive process, and AISD granted Strife's requested accommodation three days later. ROA.848-49, 939-42, 1024-26, 1129, 1131.

AISD's position was, as it had been since September 16, 2022, that it required information regarding potential alternatives. ROA.1417-28. The fact that this answer did not finally come until after the TRO hearing is undisputed (ROA.849-50) and unavailing because the transaction of events only serves to show the veracity of AISD's explanation for the protracted interactive process and the later abandoned medical examination directive—that the District needed information to conclude the process, which is not evidence of falsity, let alone pretext. *See Reeves*, 530 U.S. at 148. Accordingly, this Court should affirm summary judgment on Strife's discrimination and retaliation claims because of her wholesale failure to demonstrate pretext. *See King*, 2024 WL 4132676, at *6.

## D.   *Strife's interference claim was, and remains, wholly unsupported.*

AISD moved for summary judgment on Plaintiff's ADA interference claim. ROA.754-55. The district court noted that Strife did not "substantively address" the interference claim in her response and, instead, conflated this claim with her retaliation claim in a single footnote. ROA.1096, 1855-56. Construing Strife's

response liberally, the district court rightly concluded that she failed to point to specific evidence in the record showing how AISD interfered with any rights under any of the disability discrimination statutes. ROA.1855-56 (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

Foremost, Strife made no substantive argument to support her interference claim in the district court. ROA.1096. Therefore, Strife has forfeited any argument that the district court erred in granting summary judgment on her un-defended claim. *See Rollins v. Home Depot USA*, 8 F.4th 393, 397-98 (5th Cir. 2021).

Further, to the extent Strife's single footnote in her Response to AISD Motion for Summary Judgment is sufficient to guard against forfeiture of her interference claim on appeal, the record clearly demonstrates that summary judgment was profoundly justified as to this claim. The ADA makes it unlawful for an employer to interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter. 42 U.S.C. § 12003(b). This Court has not yet articulated a test for an interference claim, but Circuit Courts that have generally agree that the elements of the claim are that the employee: (1) engaged in activity statutorily protected by the ADA; or (2) engaged in, or aided or encouraged others in, the exercise or enjoyment of ADA protected rights; and (3) that the defendant coerced,

threatened, intimidated, or interfered on account of her protected activity; and (4) that the defendants were motivated by an intent to discriminate. *Frakes v. Peoria Sch. Dist.*, 872 F.3d 545, 550 (7th Cir. 2017)) (citing *Brown v. City of Tucson*, 336 F.3d 1181, 1191-93 (9th Cir. 2003)).[5] Courts warn that the term "interference" should not be read "so broad as to prohibit 'any action whatsoever that in any way hinders a member of a protected class.'" *Id.* at 1192 (quoting *Mich. Prot. & Advocacy Serv. v. Babin*, 18 F.3d 337, 347 (6th Cir. 1994)).

Although the district court did not reach the merits (or lack thereof) of Strife's interference claim, the record demonstrates that summary judgment would have been appropriate based on Strife's own deposition testimony. Specifically, Strife admitted that no AISD employees engaged in any behavior toward her at any time during the interactive process that was threatening, let alone that anyone was motivated by an "intent do discriminate." ROA.789, 829, 845, 854-55. Put succinctly, even if Strife did not forfeit her interference claim before the district court, the record evidence in this case fully supports summary judgment. *Kelly v. Town of Abingdon, Va.*, 90 F.4th 158, 171-72 (4th Cir. 2024).

---

[5] The EEOC cites to *Brown*, as AISD did in its Motion for Summary Judgment, as setting forth the appropriate test for an interference claim. *See* EEOC Brief at p. 24. Strife never has articulated any test or attempted to apply one in support of her interference claim. ROA.1096; Strife Brief at pp. 53-54. And, as the EEOC takes issue with the district court shortening the test to include only the "protected activity" component, that is perhaps the direct result of Strife informing the district court that her interference claim was "predicated on the same underlying facts as her ADA retaliation claim," and incorporating "her ADA retaliation analysis by reference." ROA.1096.

## CONCLUSION AND PRAYER

AISD requests that the Court affirm the June 12, 2024, Final Judgment of the

United States District Court for the Southern District of Texas, Houston Division.

Respectfully submitted,

SPALDING NICHOLS LAMP LANGLOIS

/s/ C. Cory Rush_____
C. CORY RUSH
State Bar No. 24074989
Federal I.D. No. 21711
crush@snll-law.com
3700 Buffalo Speedway, Ste 500
Houston, Texas 77098
Telephone: (713) 993-7066
Facsimile: (888) 726-8374

*Attorneys for Defendant-Appellee*
*Aldine Independent School District*

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2024, I electronically filed the foregoing
with the Clerk of Court using the CM/ECF system and addressed as follows:

Scott Newar
440 Louisiana, Suite 900
Houston, Texas 77002
Attorney for Plaintiff-Appellant

/s/ C. Cory Rush_____
Attorney for Defendant-Appellee
Aldine Independent School District

50

## **CERTIFICATE OF COMPLIANCE**

This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f), this document contains 11,504 words.

This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in size-14 Times New Roman font.

/s/ C. Cory Rush
Attorney for Defendant-Appellee
Aldine Independent School District
October 9, 2024